JOHN R. THOMPSON *et al.*, Plaintiffs-Appellants, *v.* COOK COUNTY ZONING BOARD OF APPEALS *et al.*, Defendants-Appellees.—(BEVERLY BANK *et al.*, Intervenors-Defendants-Appellees.)

First District (2nd Division)    No. 80-190

Opinion filed May 12, 1981.

562

Douglas Polsky and Herbert H. Fisher, both of Chicago (Jack Siegel, of counsel), for appellants.

Law Offices of Raymond F. Simon and Lawrence J. Suffredin, Jr., Special State's Attorneys, of Chicago, for appellees.

Daniel L. Houlihan, of Chicago, for *amicus curiae*, First National Bank of Oak Lawn.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This appeal challenges the validity of an amendatory zoning ordinance and special use granted by the Board of Commissioners of Cook County on May 21, 1979. The ordinance (79-O-11) rezoned a 176-acre tract in unincorporated Palos Township from R-3 Single Family Residence District (40,000 square feet residential lot sizes) to R-5 Single Family Residence District (10,000 square feet residential lot sizes). The special use permitted a planned unit development of 427 single-family homes. Plaintiffs, homeowners in unincorporated Palos Township, filed a seven-count complaint against the Cook County Board of Zoning Appeals and the Cook County Board of Commissioners seeking a declaratory judgment that the ordinance and permit were void. Plaintiffs also prayed for an injunction restraining the County of Cook and its officials from amending the official county maps and records and from issuing any building permits for construction of the proposed planned unit development which would have been permissible under the R-5 zoning created by the amendatory ordinance. Beverly Bank and Trust Company, the owner of the subject property, Lawn Builders, Inc., which had an option to buy the property from Beverly, and T. J. Cachey Builders and Hartz Construction Company, which had a contract to purchase the property from Lawn Builders, were granted leave to intervene as defendants.

On October 22, 1979, the trial court dismissed counts I through V of plaintiffs' second amended complaint for failure to state a cause of action and dismissed as defendants on all counts the Cook County Zoning Board of Appeals and its members. Following a bench trial, the court, on January 2, 1980, granted judgment in favor of defendants-appellees, the Cook County Board of Commissioners and its members, on counts VI, VII and VIII of plaintiffs' third amended complaint.

Plaintiffs appeal from the orders entered on October 22, 1979, and January 2, 1980, and present the following issues for our review: (1) whether the procedures followed in this case by the Zoning Board of Appeals and the Board of Commissioners invalidated the commissioners' adoption of the amendatory zoning ordinance and its grant of a special use permit; (2) whether the transcript of testimony taken before the Zoning Board of Appeals was properly admitted into evidence as a defense exhibit; and (3) whether the amendatory zoning ordinance and special use are arbitrary, unreasonable and without substantial relation to

the public health, safety and welfare. For the reasons hereinafter set forth we affirm the judgments of the trial court.

In 1976 the Beverly Bank and Trust Company obtained through foreclosure the 176-acre tract of land which is the subject of this appeal. The tract is irregular in shape and is located entirely within the unincorporated area of Palos Township. Its northern border is 125th Street. Its southern border is 131st Street. Its eastern border is 104th Avenue, and on the west it was bordered by some single family homes. The tract was then zoned R-3 Single Family Residence District under the Cook County Zoning Ordinance. R-3 permits single-family residences on homesites of not less than 40,000 square feet (approximately one acre). Except for property owned by the Cook County Forest Preserve District on the northern boundary of the tract and a small area owned by Elementary School District 118 on the eastern side (zoned P-1), all of the land surrounding the tract was also zoned R-3 and was either vacant or had single-family homes on some of the lots.

When Beverly foreclosed on the property, the land was vacant and unimproved. A swamp covered an area of 15 to 20 acres in the middle of the tract. Approximately 700 feet north of the southern boundary of the property (131st Street) there is a 175-feet-wide Commonwealth Edison right of way which bisects the entire tract from east to west. High line transmission towers have been constructed on the right of way.

As part of unincorporated Cook County, the tract was in an area patrolled by the Cook County sheriff's police. The patrol consisted of a one-man vehicle that operated 24 hours a day. In emergencies additional police were available from neighboring municipalities. Fire protection was provided by a 50-man, 4-unit, volunteer fire department which was responsible for a 36-square-mile area. With regard to sewerage and water, most of the homes in the surrounding area used individual wells and septic tank systems. The tract was in Elementary School District 118 and Consolidated High School District 230.

On September 14, 1978, Beverly Bank filed applications with the Cook County Department of Building and Zoning for a map amendment to the Cook County Zoning Ordinance changing the zoning from R-3 Single Family Residence District to R-5 Single Family Residence District (single-family residences on lots of not less than 10,000 square feet) and for a special use permitting a planned unit development of 427 single-family homes. The applications were referred to the Zoning Board of Appeals. On October 20, 1978, the Zoning Board held a public hearing on the applications at the Palos Park Village Hall. Plaintiffs, local home-owners, appeared and objected to the proposed amendment and special use. Their written protest was submitted to the secretary of the Zoning Board on November 16, 1978.

On January 3, 1979, the Zoning Board, with Chairman Alex Seith abstaining, voted two to two on whether to recommend the applications to the Cook County Board of Commissioners. Before the commissioners had an opportunity to consider the proposed changes, plaintiffs brought a five-count suit for declaratory judgment and injunctive relief against the Zoning Board of Appeals and its members and the Board of Commissioners and its members. On April 2, 1979, this suit was dismissed as premature.

On May 21, 1979, the Board of Commissioners voted nine to six to approve the applications, whereupon plaintiffs again filed suit. Their seven-count second amended complaint was filed on June 4, 1979. As previously indicated, Beverly Bank, Lawn Builders, Inc., T. J. Cachey Builders and Hartz Construction Co. were given leave to intervene as defendants.

On October 22, 1979, the trial court granted defendants' motion to dismiss counts I through V of plaintiffs' second amended complaint for failure to state a cause of action and dismiss the remaining two counts (VI and VII) against the Zoning Board of Appeals and its members. The propriety of the trial court's order dismissing counts I through V, which questioned the procedures followed by the Zoning Board of Appeals and the Board of Commissioners, will be reviewed in part I of this opinion. Prior to trial on counts VI and VII, which challenged the reasonableness of the zoning amendment and special use, plaintiffs filed a third amended complaint adding as count VIII a claim that the Zoning Board's notice of public hearing was deficient.

To sustain the allegations of counts VI and VII plaintiffs called 11 witnesses and presented 23 exhibits. The witnesses included a licensed real estate broker and developer in Palos Township, a custom builder, an excavating contractor, seven owners of single-family residences contiguous or near the 176-acre tract, and the former owner of the entire parcel subject to development. At the close of plaintiffs' case defendants moved for a directed finding. After the trial court denied this motion, defendants offered into evidence as *defense* exhibits *plaintiffs'* exhibits Nos. 4 and 8 which, respectively, were the findings and recommendations of the Zoning Board of Appeals and the report of proceedings before that board. Plaintiffs objected, contending that the documents could not be considered as substantive evidence on the disputed issues in the case because they were inadmissible hearsay. The trial court, however, overruled this objection, finding that the plaintiffs previously had offered into evidence the same documents without placing any restrictions on their use. The admissibility of these exhibits will be considered in part II of this opinion. After the exhibits were received into evidence, defendants rested.

On January 2, 1980, the trial court entered judgment for defendants on all counts. The trial court's resolution of the substantive issues raised by counts VI and VII of plaintiffs' third amended complaint (relating to the reasonableness of the amendatory ordinance and special use) will be considered in part III of this opinion. The court's resolution of the procedural issue posed by count VIII (relating to the Zoning Board of Appeals' notice of public hearing) is reviewed in part I, together with plaintiffs' other procedural issues which we now address.

## I

Plaintiffs contend that a valid written protest was filed with the Zoning Board of Appeals, thereby requiring a three-quarters vote of the Board of Commissioners to approve the applications.

Under sections 13.97(2) and 13.10—5 of the Cook County Zoning Ordinance, a three-quarters majority vote of the Board of Commissioners is necessary to approve an amendatory zoning ordinance or special use whenever a written protest has been submitted to the Zoning Board of Appeals in accordance with section 13.15 of the zoning ordinance. Section 13.15 provides in part that "written protests * * * will be accepted from the owners of twenty (20) percent of the frontage immediately adjoining the property proposed for receiving a[n] * * * amendment, or special use; or by twenty (20) percent of the owners of the property whose land has frontage across an alley or directly opposite therefrom * * *."

By unanimous vote the Zoning Board of Appeals ruled that the protest filed by the property owners (plaintiffs' exhibit No. 3) was invalid because, *inter alia*, "it * * * failed to indicate any percentage of frontage ownership by said protestors * * *." (Plaintiffs' exhibit No. 4, at 12.) The question presented by this record is whether the protest on its face satisfied the requirements of section 13.15 thereby necessitating a three-quarters vote of the Board of Commissioners. We hold that it did not because the protest failed to establish that the named protestors owned the requisite percentage of frontage.

■■ Paragraph one of the protest, attached to plaintiffs' second amended complaint, states: "NOW COMES the owners of more than twenty (20%) percent of the frontage immediately adjoining the property proposed for receiving a compensatory development right and special use * * *." The final paragraph recites that the 20 private property owners whose names are listed in the appendix to the protest "are seized of lands comprising more than 60% of the boundary of the proposed site." The term "frontage," however, is not synonymous with "boundary" (or "circumference," which appears in plaintiffs' various complaints). "Frontage" does not mean *any* contiguous boundaries but "that part of the parcel sought to be rezoned that gives access frontage on a roadway, alley or other public

way. Property that is adjacent and contiguous to a stream, highway or road may be said to have frontage thereon." *Village of Bannockburn v. County of Lake* (1959), 17 Ill. 2d 155, 159, 160 N.E.2d 773; *Chapman v. County of Will* (1973), 55 Ill. 2d 524, 529, 304 N.E.2d 287.

The protest filed in this cause was deficient. Many of the addresses given for the protesting property owners did not have frontage immediately adjoining the tract. For example, neither the Archambault property contiguous to the northwest corner of the tract nor any of the homes in the Post and Rail Farms subdivision on the tract's western border had "frontage" immediately adjoining the property proposed for receiving an amendment and special use. Many of the other addresses listed in the protest applied to property contiguous to the tract but not having frontage thereon. Based on our review of the protest, the exhibits submitted and the argument in this case we believe plaintiffs may have misconstrued the definition of "frontage." To accept plaintiffs' interpretation would permit, as the supreme court observed in *Chapman v. County of Will*, "an objection to be filed by any property owner who would have a common border on any portion of the perimeter of the property sought to be altered." (*Chapman*, at 528-29.) Plaintiffs failed to establish in their protest that they owned the requisite percentage of frontage. For that reason the Zoning Board of Appeals properly rejected the purported protest as invalid.

Plaintiffs next contend that the tie vote of the Zoning Board of Appeals required a three-quarters vote of the Board of Commissioners to approve the proposed zoning amendment. Since the amendment did not receive a three-quarters vote, plaintiffs submit that the amendatory ordinance is void.

■■ Section 13.97(2) of the zoning ordinance provides that "[i]n cases where the Zoning Board of Appeals recommends that a proposed amendment not be adopted, ° ° ° such amendment shall not be passed except by the favorable vote of three quarters (3/4) of all members of the Board of Commissioners of Cook County." In the case at bar the Zoning Board of Appeals, with Chairman Seith abstaining, voted two to two on the applicant's proposed amendment reclassifying the subject property from R-3 District to R-5. In our judgment a tie vote is not a recommendation that the "proposed amendment not be adopted." It is no recommendation at all and does not trigger an extraordinary majority vote by the Board of Commissioners.

Plaintiffs, however, refer us to section 3.3 of the county zoning enabling act (Ill. Rev. Stat. 1979, ch. 34, par. 3156), which states in pertinent part that "the concurring vote of 4 members of a board consisting of 5 members or the concurring vote of 5 members of a board consisting of 7 members is necessary ° ° ° to decide in favor of the

applicant any matter upon which it is required to pass under any such ordinance or resolution, or * * * to recommend any variation or modification in such ordinance or resolution to the county board." (Ill. Rev. Stat. 1977, ch. 34, par. 3156.) According to plaintiffs' interpretation of this statute, unless four members of a five-member county zoning board of appeals vote to recommend an amendatory zoning ordinance (which plaintiffs equate with a "modification" in an ordinance), a three-quarters vote of the Board of commissioners is necessary to pass the amendment. Since only two members of the Zoning Board of Appeals voted in favor of the amendatory ordinance proposed here, the extraordinary majority was needed. We cannot concur with plaintiffs' analysis.

■■ Initially, we note that under the 1970 Illinois Constitution, Cook County is a home-rule unit of local government. (Ill. Const. 1970, art. 7, §6(a).) Home-rule powers include zoning. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 511-12, 389 N.E.2d 553; *Johnny Bruce Co. v. City of Champaign* (1974), 24 Ill. App. 3d 900, 903-04, 321 N.E.2d 469.) A home-rule unit has the power to enact whatever zoning ordinance it chooses as long as the legislative enactment comports with constitutional requirements. (*Scandroli v. City of Rockford* (1980), 86 Ill. App. 3d 999, 1002, 408 N.E.2d 436.) For that reason Cook County is not bound by section 3.3 of the county zoning enabling act. And, contrary to plaintiffs' suggestion, nothing in section 13.33 of the county zoning ordinance requires Cook County to apply section 3.3 in determining when an extraordinary majority vote is necessary. Section 13.33 states in part that the Zoning Board of Appeals "shall adopt its own rules and procedure not in conflict with this Ordinance or with the applicable Illinois Statutes * * *." It is the ordinance itself which sets forth the circumstances requiring an extraordinary majority and not any rule of the Zoning Board of Appeals.

Assuming, *arguendo*, that section 3.3 applied to Cook County, we would not reach the result plaintiffs urge upon us. Section 3.3 does not state when an extraordinary majority vote of the county board is required. That is determined under section 5 (Ill. Rev. Stat. 1979, ch. 34, par. 3158). But section 5 expressly excludes from its scope any county which is a home-rule unit. Moreover, section 5 demands an extraordinary majority vote of the county board only when a valid protest has been filed. It does not impose this requirement when the local zoning board of appeals fails to recommend the proposed modification. See *Traders Development Corp. v. Zoning Board* (1959), 20 Ill. App. 2d 383, 390-92, 156 N.E.2d 274.

Plaintiffs also bring to our attention the case of *Sokolis v. Zoning Board of Appeals of the City of Springfield* (1959), 21 Ill. App. 2d 178, 157 N.E.2d 427. *Sokolis* interpreted what is now subsection 11—13—3(E) of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 22—13—3(E)).

That section provides in pertinent part that the concurring vote of four members of a seven-member municipal board of zoning appeals is necessary "to decide in favor of the applicant any matter upon which it is required to pass under such an ordinance, or to recommend any variation or modification in the ordinance to the corporate authorities." At issue in *Sokolis* was whether a three-to-three vote on a petition to grant a variance (one member was absent) resulted in a denial or granting of the variance. The court appropriately held that the application had been denied since it had not received the fourth vote required by the statute. *Sokolis* is inapplicable to the facts in the instant case.

A tie vote by the Cook County Zoning Board of Appeals on an application for a *variance* would constitute a defeat of that application since the zoning ordinance specifically requires a majority vote to grant a variance. (Section 13.74.) That does not mean, however, that a tie vote on an application to *recommend a zoning amendment* triggers a three-quarters majority vote. A three-quarters vote of the Board of Commissioners is required to approve an amendatory zoning ordinance when the Zoning Board of Appeals "recommends that the amendment *not* be adopted." (Emphasis added.) (Section 13.97(2).) This language may be contrasted to what we find in the Illinois Municipal Code. Section 11—13—10 (Ill. Rev. Stat. 1979, ch. 24, par. 11—13—10) states that "[i]n municipalities of less than 500,000 population, where a variation is to be made by ordinance, upon the report of the board of appeals, * * * any proposed variation *which fails to receive the approval of the board of appeals* shall not be passed except by the favorable vote of two-thirds of all aldermen or trustees of the municipality." (Emphasis added.) And in counties where a *variance* can be made only by ordinance or resolution of the board of commissioners upon the report of the board of zoning appeals, "any proposed variation *which fails to receive the approval of the board of appeals* shall not be passed except by the favorable vote of 3/4 of all the members of the county board, * * *." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 34, par. 3154.

Had the Board of Commissioners of Cook County intended the zoning ordinance to be interpreted as plaintiffs urge, it could have drafted the ordinance so that an extraordinary majority is required to approve any proposed amendment "which fails to receive the approval of the board of appeals." The ordinance, however, is not so worded. On a tie vote the Zoning Board of Appeals could not recommend that the "amendment not be adopted." Here, the Board of Commissioners found that the Zoning Board had recommended "neither adoption nor non-adoption of said applications for amendment and special use." (Plaintiffs' Exhibit No. 5, at 3389.) A simple majority vote was sufficient to pass the amendatory zoning ordinance.

Plaintiffs contend further that the validity of the amendatory zoning ordinance and special use permit was vitiated by the Zoning Board of Appeals' failure to make proper findings. According to plaintiffs the findings were not sufficient to support the special use and amendment requirements of the Zoning Board. Defendants respond that an alleged lack of evidentiary support for determinations made by the Zoning Board cannot invalidate a final ordinance adopted by the Board of Commissioners because the recommendation and findings of the Zoning Board are not binding on the Board of Commissioners.

The jurisdiction of the Zoning Board of Appeals is set forth in section 13.32 of the zoning ordinance. By the terms of paragraph 1 of that section, the Zoning Board is vested with the authority "[to hear and decide appeals from any order, requirement, decision, or determination made by the Department of Building and Zoning under this Ordinance." (See also section 13.81.) And paragraph 2 of section 13.32 empowers the Zoning Board "[t]o hear and pass upon applications for variations * * *." Under these subsections the Zoning Board sits as an administrative agency and from orders entered in such proceedings appeal may be taken to the courts.[1] Under paragraph 4, however, the Zoning Board hears "all applications for special uses, Planned Unit Developments, amendments, * * * to this Ordinance in the manner prescribed by, and subject to, the standards established herein, and report said findings and recommendations to the Board of Commissioners." Where, as here, the Zoning Board act pursuant to section 13.32, paragraph 4, it sits as a type of legislative committee to give parties a hearing to provide the County Board with facts bearing on the merits of a proposed amendment, planned unit development and special use.

> "In such a case the action having legal significance is the County Board's passage of the amending ordinance. This being legislative, the court cannot inquire into whether the action of the County Board was based on adequate knowledge, nor is there any principle or precedent on which a legislative act may be held invalid because some fact was misrepresented to the legislative body." *Village of Justice v. Jamieson* (1955), 7 Ill. App. 2d 113, 119, 129 N.E.2d 269.

The Zoning Board's reports or recommendations are advisory only, and it is not required that the evidence produced at the hearings support the Zoning Board's conclusion. *Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 249, 223 N.E.2d 738.

---

[1] "All decisions and findings of the Zoning Board of Appeals, on appeal or upon application for a variation after a hearing, shall, in all instances, be final administrative determination and shall be subject to review by court as by law may be provided ° ° °." Section 13.34.

In support of their argument, plaintiffs have relied principally on *Lindburg v. Zoning Board of Appeals* (1956), 8 Ill. 2d 254, 133 N.E.2d 266. In *Lindburg* the supreme court found that the zoning board's action in deciding on an application for a variance was improper because, contrary to statute, it did not make findings of fact indicating the reasons for its order. Plaintiffs have also cited several appellate court decisions which have held that statutorily mandated findings of fact must be specifically set forth by zoning boards of appeals in reaching their decisions. As the court noted in *Schroeder v. County of Winnebago* (1978), 58 Ill. App. 3d 207, 209, 374 N.E.2d 24, however,

"* * * there is one distinguishing factor in these cases which is controlling. In each instance the reviewing zoning body, statutorily required by the courts to make specific findings of fact, had the *ultimate authority* to grant or deny the special use or variance requested, whereas in the instant case, the Zoning Board of Appeals, which has made improper findings of fact, did not have the final authority to grant or deny Appelgren's request for a special use permit. This power was vested only in the Board of Supervisors, which by ordinance was not even bound by the Zoning Board of Appeals' findings [citation]."

■■ As in *Schroeder*, we are not here concerned with the Zoning Board's authority to "hear and pass upon applications for variations." (Section 13.32.) The authority of the Board of Commissioners of Cook County to adopt the amendatory zoning ordinance and grant the special use for a planned unit development was not affected by the Zoning Board of Appeals' alleged failure to make findings of fact mandated by ordinance. *Schroeder*; see also *La Grange State Bank v. County of Cook* (1977), 53 Ill. App. 3d 79, 86, 368 N.E.2d 601.

Plaintiffs also allege in this argument that the Zoning Board of Appeals' report to the County Board was "totally void" because Chairman Seith, who had disqualified himself from any participation in the proceedings, had prepared the findings and signed the report. It is unnecessary for us to decide whether Chairman Seith's conduct was in fact improper. The threshold question is whether his alleged conflict of interest had any legal effect on the subsequent action taken by the County Board.

■■ We are without power to inquire into the wisdom of an ordinance or the motives which prompted its enactment with the possible exception that ordinances may be impeached for fraud by persons injuriously affected thereby. (*Anthony v. City of Kewanee.*) Count V of plaintiffs' second amended complaint does not allege fraud, and an appearance of impropriety alone is insufficient to invalidate a zoning ordinance. (*Rutland Environmental Protection Association v. Kane County* (1975), 31 Ill.

App. 3d 82, 87, 334 N.E.2d 215.) A mere allegation of conflict of interest of a participating zoning board chairman does not invalidate a final ordinance adopted by the county board, particularly since the recommendations and report of the zoning board of appeals are not binding on the county board. *Athey v. City of Peru* (1974), 22 Ill. App. 3d 363, 370, 317 N.E.2d 294; see also *Geneva Residential Association, Ltd. v. City of Geneva* (1979), 77 Ill. App. 3d 744, 756, 397 N.E.2d 849.

Finally, plaintiffs allege in Count V that the findings of the Zoning Board were "developed outside the time and place of the deliberation of the Cook County Zoning Board of Appeals and, therefore, are in violation of the Open Meetings Act [Ill. Rev. Stat. 1977, ch. 102, par. 41]." Without expressing any opinion on whether reports of public boards and commissions must be prepared at a public meeting, "nothing in the act or in case law mandates the invalidity of public action allegedly taken during closed proceedings." *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 421, 376 N.E.2d 1054.

Plaintiffs also maintain that the zoning ordinance and special use permit were void because the Zoning Board did not transmit its written findings of fact to the Board of Commissioners within 90 days, as required by the ordinance. (Section 13.96—1.) Defendants respond that the period of filing was extended.

■■ Even if it is assumed that the Zoning Board transmitted its findings more than 90 days after the close of the hearing on October 20, 1978, we find no provision in the zoning ordinance that would require us to hold the amended ordinance and special use invalid. Plaintiffs' reliance on *Cosmopolitan National Bank v. City of Chicago* (1963), 27 Ill. 2d 578, 190 N.E.2d 352, is misplaced because that case involved a municipal ordinance which expressly required passage of a proposed amendment to the zoning code within six months from the time it had been filed in the Chicago City Council. The Cook County Zoning Ordinance contains a similar provision regarding the Board of Commissioners' failure to act on a proposed amendment within 60 days of the time the Zoning Board of Appeals' recommendations are received. Under section 13.97—3, the application is "deemed to have been denied" unless an extension has been granted. (*Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 240, 309 N.E.2d 763.) We find nothing in the ordinance, however, that requires the same result when the Zoning Board of Appeals has failed to submit its findings within the period required by law. *Schroeder v. County of Winnebago* (1978), 58 Ill. App. 3d 207, 209-10, 374 N.E.2d 24.

Plaintiffs have also contended that the subject property reverted to its preexisting zoning and uses because the applicant's interest in the property allegedly terminated on April 1, 1979, seven weeks before the

County Board voted on the ordinances. We need not reach the merits of plaintiffs' argument, however, because we find that it is premised on an erroneous factual assumption. Upon our review of the pleadings and exhibits in this cause, it is apparent that the applicant for the zoning amendment and special use permit was not, as plaintiffs suggest, T. J. Cachey Builders and Hartz Construction, who had contracted to purchase the property from Lawn Builders, Inc., but the Beverly Bank which retained legal and equitable title to the property under Trust No. 8-5300 and had given Lawn Builders an option to buy. As the owner of the subject property, Beverly was entitled to apply for the amendment and special use requested here. Sections 13.92 and 13.10—2.

Plaintiffs' final argument regarding the procedure by which this zoning amendment was adopted concerns the Zoning Board's notice of public hearing. Plaintiffs contend that the zoning ordinance is void because the notice was not timely.

The Cook County Zoning Ordinance requires the Zoning Board of Appeals to hold a public hearing on each application for an amendment to the ordinance. (Section 13.94.) Notice of the time and place of the hearing must be published not less than 15 days before such hearing. (Section 13.95—1.) The notice in the case at bar was published on October 5, 1978, and the hearing was held on October 20, 1978. Citing the rule of construction that "the time within which any act provided by law is to be done shall be computed by excluding the first day and including the last * * *" (Ill. Rev. Stat. 1977, ch. 1, par. 1012), plaintiffs argue that the notice was defective. By excluding the day the notice was published (October 5), there were only 14 days before the date of the hearing (October 20).[2]

██ In our opinion plaintiffs have misapplied this rule because in making their computation they have excluded both the first and the last days. But if, as the statute requires, the first day is excluded and the last day is included, then there were 15 days. (*Oak Forest Mobile Home Park, Inc. v. City of Oak Forest* (1975), 27 Ill. App. 3d 303, 308, 326 N.E.2d 473 (where on September 3 notice was published for a hearing to be held on September 18); and *Blankenship v. County of Kane* (1980), 85 Ill. App. 3d 621, 623, 407 N.E.2d 145 (where the dates were July 10 and July 25).) We have examined the cases plaintiffs cite and find that the interpretation in such cases of 15-day notice requirements accords with our own.

---

[2] The statute on which plaintiffs rely establishes a rule to be followed in construing *statutes*. (Ill. Rev. Stat., 1977, ch. 1, par. 1001.) Here we are concerned with the interpretation of an ordinance. Our supreme court, however, has held that the same rules which govern the construction of statutes are to be applied in construing ordinances. *City of East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 542, 229 N.E.2d 522.

## II

Plaintiffs contend that the report of proceedings before the Zoning Board of Appeals was improperly admitted into evidence. Plaintiffs also contend that the findings and recommendations of the Zoning Board should not have been admitted. We need not reach the latter contention, however, because, before hearing closing argument, the trial court said it had considered only the testimony presented to the board and not the board's own conclusions.

■■ Plaintiffs are correct in stating that the record made before the Zoning Board of Appeals when sitting as a legislative subcommittee is not admissible at a trial challenging a legislatively enacted zoning change. (*Smith v. County Board of Madison County* (1980), 86 Ill. App. 3d 708, 713, 408 N.E.2d 452; *Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 242, 309 N.E.2d 763; *Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 249, 223 N.E.2d 738.) In the case at bar, however, it was the plaintiffs who originally asked that the transcript (Plaintiffs' exhibit No. 8) be admitted into evidence. Although plaintiffs assert that the transcript of evidence was offered "for the limited purpose of establishing that the hearing had taken place," the record fails to support this assertion.

■■ At trial, plaintiffs' counsel asked that the transcript "be admitted into evidence." Counsel did not state that it was being offered for the limited purpose now suggested. And, contrary to plaintiffs' representation, the exhibit was then admitted subject to defendants' objection as to its relevance. During trial, plaintiffs' counsel repeatedly advised the court that the transcript had been admitted into evidence as an exhibit. No limitation on the use of the exhibit was even suggested until after plaintiffs had completed their case and defendants were arguing a motion for a directed finding. At this posture of the case, plaintiffs' attempt to limit the purposes for which the exhibit had been admitted was not timely. The exhibit previously had been offered and admitted into evidence not subject to any limitation. Since the exhibit had been introduced without restriction, defendants properly asked that it be designated and accepted as a defense exhibit as well. The report of proceedings was admitted and its contents are relevant to the substantive issues we now consider. *Forestview.*

## III

■■■ The principles governing judicial review of zoning ordinances are well established. Zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights

without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago* (1949), 402 Ill. 321, 330, 83 N.E.2d 592.) For that reason, a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899.

■■ The same principles apply to amendatory zoning ordinances. (*Broccolo v. Village of Skokie* (1972), 14 Ill. App. 3d 27, 32, 301 N.E.2d 74; *La Salle National Bank v. City of Chicago* (1954), 4 Ill. 2d 253, 256, 122 N.E.2d 519; *Stratford Aire Association v. Hibser* (1960), 26 Ill. App. 2d 214, 220, 167 N.E.2d 856.) Where there is room for a legitimate difference of opinion concerning the reasonableness of the classification effected by the ordinance, or an amendment thereto, or such is fairly debatable, the courts will not interfere with the legislative judgment. *Stratford.*

■■ The factors to be considered in determining the validity of an amendatory ordinance are the same as those involved in ascertaining the legality of the original ordinance, namely, (1) the existing uses and zoning of nearby property, (2) the extent property values are affected by the particular classification, (3) the promotion of the public welfare, (4) the relative gain to the public as compared to the hardship imposed on the property owner, and (5) the suitability of the property for the purpose zoned. (*Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 243-44, 309 N.E.2d 763.) No one factor is determinative and each case must be decided on its own facts. (*Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 569, 386 N.E.2d 309.) Finally, the trial court's finding will not be disturbed unless against the manifest weight of the evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-27, 377 N.E.2d 21.

■■ Special uses also enjoy a presumption of validity. (*Brown v. County of Lake* (1966), 67 Ill. App. 2d 144, 153, 213 N.E.2d 790.) This presumption may be overcome only by clear and convincing evidence that the granting of the special use permit will result in "real or substantial harm to the public health, safety, morals or welfare * * *." *Corenell v. County of Du Page* (1977), 58 Ill. App. 3d 230, 236, 374 N.E.2d 1.

■■ Plaintiffs contend that they purchased their property in reliance on existing zoning and uses, and that "they have a right to so rely unless the public good *demands* a change." Plaintiffs cite two cases in support of this principle, but neither is applicable to the facts in the case at bar. It is not *plaintiffs'* property that has been rezoned but property owned by the

applicant, Beverly Bank. Plaintiffs cite no case and we are aware of none in which an amendatory zoning ordinance has been held invalid solely because of the objections of adjoining property owners who had purchased their homes in reliance on pre-existing zoning classifications. Although property owners have a right to rely upon the classification of their property and know that the classification will not be changed unless required for the public good, they also acquired their property knowing that amendments could be made to the ordinance within the limits of the law. (*Bohan v. Village of Riverside* (1956), 9 Ill. 2d 561, 567, 138 N.E.2d 487.) A property owner has no absolute right in the continuation of a zoning classification. Each case must be decided on the basis of the ordinance in effect at the time of decision by a court. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 517, 377 N.E.2d 21.) An amendatory ordinance enjoys the same presumption of validity as the initial ordinance. (*Boham; Forestview.*) That presumption is not overcome unless the challenging party proves by clear and convincing evidence that the ordinance has no substantial relation to the public good.

The first factor which we consider in determining the reasonableness of the zoning amendment is the existing uses and zoning of nearby property. (*Fay v. City of Chicago* (1979), 71 Ill. App. 3d 603, 608, 390 N.E.2d 125.) The amendatory zoning ordinance permits lot sizes of not less than 10,000 square feet (R-5 District). Under the terms of the proposed development, the average lot size was represented to be 14,512 square feet (one-third of an acre). Plaintiffs introduced testimony that existing homesites on the northwest border of the subject property were between 1 and 9.7 acres. Other testimony, however, established that less than a mile east of the subject property, at the northwest corner of 131st Street and 96th Avenue, is a 126-acre parcel zoned R-6 General Residence District. A planned unit development for that area has been approved which envisions 34.5 acres for commercial use, 16.8 acres for multifamily use with a density of 10 units per acre and 45.3 acres for 191 single-family homes on minimum lot sizes of 10,000 square feet (the same as the subject property). West of that development and located less than one-quarter of a mile from 104th Avenue (the eastern boundary of the tract) is a 69-acre parcel which has been rezoned R-5. A planned unit development of 194 single-family homes on minimum lot sizes of 10,000 square feet has been approved for that parcel. Directly north of the subject property is a 14-acre parcel which was the subject of a reclassification request from R-3 to R-5 Single Family Residence District and 10,000 square feet lots.

The existing land uses and zoning in the vicinity of the proposed development include R-3 District (the 40,000-square-feet lots owned by the protestors), R-5 and R-6. The R-5 and R-6 developments are close enough to the subject property to be considered in determining the

appropriateness of the present classification. In our judgment, the R-5 zoning classification and planned unit development for the subject property are harmonious with the existing uses and zoning of nearby property.

Plaintiffs contend that the zoning amendment and special use would devalue nearby property, and also introduced testimony that the planned unit development would lower by 20% the potential selling price of existing developed single-family homes located within a two-mile radius of the project. But the same witness who gave this estimate, Alan Blount, stated that the proposed development would not devalue homes in Orland Park, a community located less than one mile from the subject property. And in forming his opinion as to the likely depreciation of homes within Palos Township itself, Blount did not take into account the existing or proposed land use, development or zoning in many areas near the subject property. He had been asked to determine value solely on the basis of a few existing used homes that had been resold.

■■ The use of property cannot be restricted merely because neighboring property owners so desire and because they think it might protect the value of their residences. (*Regner v. McHenry County* (1956), 9 Ill. 2d 577, 582, 138 N.E.2d 545.) Here, although there was testimony that there might be some loss in value to the existing single-family homes immediately adjacent to the development, there was no evidence that the development would cause permanent loss to any area. Moreover, it is apparent that the proposed development would substantially increase the value of the tract itself.

The developer, Theodore Cachey, testified before the Zoning Board that he anticipated building a total of 427 single-family homes. Approximately 90% (384) were to be three-bedroom homes ranging in price from $100,000 to $120,000 and 10% (43) were to be four-bedroom homes priced between $120,000 and $145,000. Using the lower figures, the tract, when fully developed, would be worth in excess of $43,000,000. This must be compared to its value if developed for single-family homes on minimum lot sizes of one acre. One of plaintiffs' witnesses, Donald Jeanes, estimated that homes built on one-acre sites on the tract would sell for a minimum of $180,000. Excluding the 20 acres covered by the swamp and assuming that the rest of the tract was suitable for one-acre development, the entire parcel would be worth approximately $28,000,000, substantially less than its value under the proposed development.

Next, plaintiffs argue that the development would be injurious to the public welfare. Plaintiffs complain first that the developer failed to show that he could provide an adequate supply of water. The testimony of defendants' expert witnesses at the Zoning Board of Appeals' hearing, however, established that an ample supply of water had been arranged

through a combination of digging deep wells on the property and bringing in water from the Village of Orland Park. Although plaintiffs asserted that the developer had no easement or other apparent access to Orland Park's water system, there was testimony before the Zoning Board that the developer had obtained access permits from all governmental units except Consolidated High School District 230. Moreover, an alternative routing system had been devised in the event the school district persisted in its refusal to provide an easement.

Plaintiffs also allege that the development will inundate the local schools with nearly 900 new students. The testimony at the Zoning Board's hearing does not support this figure. Kurt Wandrey, a planning and zoning consultant, testified that over the course of the four or five years during which the development was scheduled to be completed, approximately 500 school-age children would move into the area, or between 100 and 125 per year divided among several schools. Wandrey estimated that exclusive of additional State aid, the development would generate approximately 2,032 tax dollars per pupil for the additional 133 senior high school students who would be attending Consolidated High School District 230's high school. This figure is reasonably close to what plaintiffs alleged but never proved as the per pupil cost of $2,300.[3] In the case at bar plaintiffs have not shown with any expert testimony that the anticipated increase in school age population created by the proposed development would unduly burden the existing school systems. See *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 114, 324 N.E.2d 406.

Plaintiffs allege further that the proposed development would aggravate the existing traffic congestion in the area. Several witnesses testified that the major roads in the vicinity of the development were already overcrowded because of construction projects in nearby developments. Defendants' expert in traffic engineering, Gerald Lindgren, however, testified at the Zoning Board hearing that both 104th Avenue and 131st Street were operating substantially below their capacity to accommodate traffic during both peak and nonpeak hours. Lindgren also testified that the existing major thoroughfares servicing the subject property were adequate to handle the anticipated traffic of the development as well as the traffic expected to be caused by the proposed developments to the east of the tract.

Traffic intensity has been recognized as a legitimate factor in zoning (*Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 888, 365 N.E.2d 433), but plaintiffs have not proven that the present traffic situation would be so seriously exacerbated by the pro-

---

[3] We note further that shortly before the Board of Commissioners voted to approve the applications for rezoning and a special use, School District 230 completed the construction of a new high school at 171st Street and 90th Avenue.

posed development that it would have any bearing on the suitability of the projected development.

The more serious ramifications of the proposed development are in the areas of police and fire protection. It is reasonable to expect that additional protection would be necessary to serve the estimated increased population of 1,500 persons. The fire department might have to be expanded and additional units assigned from the Sheriff's police. These services could increase taxes, but the "fears that the development might cause an increase in local government costs are not a justifiable basis for denying a proper use." *Glassey v. County of Tazewell* (1973), 11 Ill. App. 3d 1087, 1090, 297 N.E.2d 235.

Plaintiffs have also contended that there would be no gain to the public from the zoning classification. However, defendants' expert William McCann, a professional real estate appraiser and consultant, testified that the proposed development would inure to the good of the public because it will afford substantial recreational and residential amenities to a larger segment of the population.

Finally, plaintiffs have questioned the suitability of the property for the purpose zoned. All of the defense experts agreed that the land as presently zoned is suitable for development along the lines proposed in the planned unit development. Several of these witnesses also indicated that development of one-acre home-sites was impractical because the soil and drainage characteristics of the land militated against the individual septic tanks and wells commonly used on one-acre sites.

■■ Based on our review of the evidence in this cause, we find that plaintiffs did not satisfy their burden of proving by clear and convincing evidence that the amendatory zoning ordinance and special use bear no substantial relation to the public welfare. At best, plaintiffs have shown that there is a difference of opinion concerning the reasonableness of the amendment and special use. That is insufficient to compel a finding that either the amendment or special use is unconstitutional. *Prairie Vista, Inc. v. County of Sangamon* (1976), 43 Ill. App. 3d 343, 345, 356 N.E.2d 1323.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.