R. C. SPIELMAN, Plaintiff-Appellee, v. THE COUNTY OF ROCK ISLAND, Defendant.—(DEERE & COMPANY *et al.*, Intervening Defendants-Appellants.)

Third District    No. 81-364

Opinion filed February 10, 1982.

Hubbard B. Neighbour, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellants.

F. Jack Nathan, of Spector, Tappa, Kopp & Nathan, of Rock Island, for appellee.

JUSTICE ALLOY delivered the opinion of the court:
This is an appeal by intervenors and defendants Deere & Company, the Saelens, and the Vande Geests (hereinafter intervenors) from the decision of the circuit court in plaintiff R. C. Spielman's declaratory

judgment action concerning the zoning of certain Rock Island County property owned by him.

The county, though a defendant, took no appeal from the court's action. The circuit court ruled that Spielman's property had been validly and properly zoned to a C-3 (commercial) classification by the Rock Island Board of Supervisors in October 1973. It also ruled that no subsequent action taken by the board had validly altered the rezoning taken in October 1973, and therefore it found that the property was zoned C-3 (commercial).

The intervenors, who are adjoining property owners, appeal from the decision of the circuit court and argue (1) that the action of the county board in October 1973 was invalid and void because the zoning board of appeals had issued its findings of fact four days after the time limit set for such findings by zoning ordinance and (2) that the plaintiff is barred by the doctrine of laches from challenging other county board action, taken in December 1974, which sought to declare the property's zoning classification as AG-1 (agriculture).

The record reveals that the controversy began on July 2, 1973, when George Yeager and John Fitzgerald filed a petition with the Rock Island County Zoning Board of Appeals (hereinafter ZBA). They sought to rezone a 19.35-acre tract of farmland in Hampton Township from AG-1 (rural agricultural) classification to C-3 (heavy commercial). Their petition was accompanied by a plat prepared by plaintiff Spielman indicating plans to construct an auto auction business and a recreational facility with pool and tennis courts. The petition was set for hearing on August 16, 1973, and adjoining property owners were duly notified. The proposed rezoning petition was met with unanimous disapproval by all the adjoining property owners, being the intervenors herein. Intervenor Deere & Company owned considerable acreage to the west of the Spielman tract. The objections were based upon the fact that the usage of the entire area was agricultural, with no commercial development. The larger segment of property, however, owned by Deere & Co., was zoned "manufacturing." The objectors feared that an auto auction business would be out of keeping with the character of the area.

At the ZBA hearing, some question was raised with respect to Deere's objections, since their adjoining property had an M-1 (manufacturing) classification. At the close of the hearing, Deere & Co. requested that the zoning administrator notify them of any action taken by the ZBA on the petition. Thereafter, on September 21, 1973, the objectors filed written objections to the proposed rezoning with the county clerk, as the county board of supervisors had final authority to decide the petitioner's request.

Thereafter, on September 27, 1973, the ZBA voted to grant the rezoning request, but no notice of such decision was sent to Deere. A little

more than a week later, on October 4, 1973, the ZBA adopted its findings of fact on the petition, emphasizing the fact that adjoining property carried the M-1 classification and that the proposed change would show a logical progression. The issuance of the findings of fact came 49 days after the ZBA hearing, in violation of the county zoning ordinance calling for such findings within 45 days after the hearing.

The petition, with ZBA recommendation, then went before the county board on October 16, 1973, and the board voted unanimously to adopt a resolution granting the rezoning request. There was no indication in the minutes of the meeting that the board had been made aware of any objections to the proposed change in zoning. Spielman attended the meeting and Yeager, still the owner, was notified by letter of the action. No notice was given to the objectors. Evidence in the record indicated that Spielman thereafter, on November 3, 1973, purchased the land from Yeager and Fitzgerald. Later, he sold back to them the north five acres of the property.

Sometime in the late winter of 1974, after the north five acres had been offered for sale as commercial property, the objectors first became aware of the zoning change adopted by the county board on October 16, 1973. They vigorously voiced their protest with the county board. On March 20, 1974, the county board met and considered what action to take with respect to the Spielman property and the Yeager and Fitzgerald property. Board members at the time were extremely upset that the zoning administrator had not informed them before of the unanimous objection to the zoning change. At the March 20, 1974, meeting the board voted unanimously to rescind their October 16, 1973, action adopting the rezoning for the 19-acre tract of land. The board also at that meeting terminated the services of the zoning administrator who had failed to inform them fully concerning the petition and the objections.

Thereafter, on the advice of counsel that its prior rescission was ineffective without notice and public hearing, the county board filed its own petition to rezone the Spielman tract (including the five acres in the north) from C-3 back to AG-1. Notice was given on the petition, and a ZBA hearing was held on July 18, 1974. Spielman attended the hearing and testified.

The same summer, on August 19, 1974, while the county board's petition with respect to the Spielman property was pending, Deere & Company petitioned to rezone its adjoining property (557 acres) from M-1 (manufacturing) to AG-1. Along with its own petition, Deere filed a motion to consolidate the county-initiated Spielman petition with its own petition and to reopen hearings in the former. The ZBA refused to reopen the Spielman property hearing. Thereafter, public hearing was held in the Deere petition case. That same day the ZBA voted to retain a C-3 class-

ification for the Spielman property. Subsequent to that action, the ZBA voted to grant Deere's petition to rezone its property.

Thereafter, the State's Attorney injected his opinion concerning the matters as to plaintiff's property that had taken place. He made a full review of the matter and indicated, in a written letter to the board, his conclusions. Such conclusions were: (1) that the initial board action that changed the zoning to C-3 was void because of the late findings of fact by the ZBA, and (2) that the rescission action of March 20, 1974, was valid as a reconsideration of the board's earlier action. He advised the board that the Spielman property was and at all times remained AG-1, as there had been no valid and effective change. He recommended that action on the pending petition to rezone to AG-1 be tabled.

On December 17, 1974, the board met and considered all pending zoning matters. It followed the State's Attorney's recommendations to the letter. The meeting was attended by Spielman's wife and by representatives of Deere & Company. The board tabled its own petition to rezone the Spielman property, declaring that the property had been, and remained, zoned AG-1. The board then voted to grant the petition of Deere & Company to rezone its adjoining acreage from M-1 to AG-1. Spielman received no formal notice of the action taken by the board in its meeting on December 17, 1974. He testified at trial that his attorney had informed him that he need not do anything until he received official notice of any board action.

Thereafter, according to evidence presented at the hearing in the declaratory judgment action and accepted by the trial court, Spielman expended about $5,000 in creating a commercial use of the property. He did not seek, nor was he denied a building permit for that use. Testimony at the hearing indicated that Spielman convinced county authorities that his commercial use was consistent with AG-1 zoning and did not require a building permit. It is undisputed that the county took no action with respect to the property from that time.

Almost five years later, in October 1979, Spielman filed the instant declaratory judgment action, seeking a determination of the zoning classification of his property. Two persons testified at the hearing on the merits, Spielman and Norman Neely, county zoning administrator. Neely was called as a witness on behalf of the intervenor-defendants.

After hearing and arguments the circuit court entered its decision and order, declaring that the Spielman property was validly rezoned to a C-3 classification in 1973 and that it had remained in that classification since 1973. The trial court found that proper notice and hearing had been accomplished in 1973, prior to the initial county board action on the property. The court also found that there was substantial compliance with the zoning ordinance requirements concerning ZBA findings of fact and

that their late filing, by four days, did not invalidate the county board's action. It concluded, as noted, that the action of the county board on October 16, 1973, was valid and that the property had been rezoned to C-3. It made a finding that Spielman had purchased the property only after the county board had granted the former owners' petition to rezone. As to subsequent board action, the circuit court found that the attempted rescission action on March 20, 1974, was ineffectual, having been taken without necessary prior notice and ZBA hearing. The court also concluded that the declaration of classification on December 17, 1974, was similarly ineffectual to make any change in zoning on the property. In its written findings the circuit court also addressed the question of laches.

> "The third determinative issue is whether the plaintiff was barred by laches in filing this action. The evidence indicates that the plaintiff expended about $5,000 towards creating a commercial use of the property in 1974 but that he did not seek and was not denied any building permit. Accordingly, the plaintiff did not have any time of commencement of a Statute of Limitations period from which to compute a time lapse that could bar him for laches. The record also does not indicate that the Intervenor changed its position in reliance upon any action of the plaintiff or any forbearance of the plaintiff, nor that the public or any other party has been prejudiced by any delay in the commencement of this action. It is not apparent that the plaintiff needed to file this suit until he was denied a commercial building permit or otherwise hindered in his development of the real estate and apparently would not yet be required to file it unless he chose to do so."

From the court's decision and judgment that the Spielman property was properly rezoned C-3 in 1973 and retained that classification thereafter, the intervenor Deere files this appeal.

Deere & Company has conceded that the rescission action on March 20, 1974, was ineffectual to change the zoning back to AG-1. Two issues are raised on this appeal.

The first issue raised is whether the initial county board action on October 16, 1973, which changed the zoning to C-3, was invalid because the ZBA's findings of fact had not been issued within the 45-day limit set down in the zoning ordinance. The ZBA findings of fact were issued 49 days after the hearing, four days after the limit set by the ordinance. They were also available to the county board at the time it considered the request in the petition. Deere & Company argues that the county board action must be held invalid because of the technical violation of the zoning ordinance in not issuing findings of fact within 45 days. It is not asserted that there was any substantive error with the findings of fact, nor that there was any prejudice to anyone in their issuance four days after the

limit set by ordinance. We find no merit in Deere's position on this issue. Several courts have considered similar factual situations and have determined that though there may be technical violations with respect to ZBA findings of fact, that nevertheless zoning action by a county board remains valid. *Schroeder v. County of Winnebago* (1978), 58 Ill. App. 3d 207, 209, 374 N.E.2d 24; *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 421 N.E.2d 285.

In *Thompson* there was an allegation that the ZBA findings were improper. In *Schroder* the ZBA had not made any findings. In both cases, county board action was upheld, despite the inadequacies with respect to ZBA findings of fact. The courts reasoned that the ZBA findings were advisory only, since the county board, and not the ZBA, had final decision-making authority over the zoning petitions. The ZBA findings had no binding effect on the county boards. Under such circumstances, the courts refused to invalidate otherwise valid county board action due to defects in ZBA findings. In the instant case, there is not any allegation that improper findings were made, nor was there any failure to make the required findings. In fact, the county board had the benefit of the ZBA findings when it considered the petition. The only defect is that the findings were issued four days after the 45-day limit set forth in the ordinance. We find no basis in that delay upon which to invalidate the board's action. *Schroeder v. County of Winnebago* (1978), 58 Ill. App. 3d 207, 374 N.E.2d 24; *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 421 N.E.2d 285.

The other issue raised by intervenor Deere & Company, and the one most heavily relied upon in argument, is the question of laches. Deere argues that Spielman should be barred by the doctrine of laches from challenging, by way of declaratory judgment action, the admittedly void action of the county board on December 17, 1974, in which the board concluded that Spielman's property was in fact zoned AG-1 and entered its declaration to that effect. As noted by the court in *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 701-02, 371 N.E.2d 260:

> "Our supreme court has defined laches as '* * * such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity.' [Citations.] To assert the defense a party must show both that there was unreasonable delay in bringing the action [citation], and that the delay materially prejudiced him. [Citation.]"

The court therein also noted that application of the doctrine of laches depends upon the particular circumstances of each case. 55 Ill. App. 3d 695, 702.

It is evident from the findings of the circuit court that it found no

prejudice to Deere & Company from the delay in bringing suit and no unreasonable delay by the plaintiff. Those findings of fact will not be disturbed unless found to be contrary to the manifest weight of the evidence. (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 421 N.E.2d 285.) While we may not have viewed the laches question in the same manner as the circuit court, its findings are supported in the evidence. The court noted that Spielman had spent money in 1974 for the development of a commercial use on his property. In so doing, he neither sought nor was he denied a building permit. Additionally, it must be noted that the whole matter had taken a rather tortuous path from the start, and had concluded in a somewhat confusing manner. There was evidence that Spielman had been advised by counsel to do nothing until given official notice of board action, and there was evidence that he never received official notice of the December 1974 action by the board. The court found that Spielman had no obligation in 1974 or thereafter to assert a right to commercial zoning, or to challenge the December 1974 action, where he was not denied a permit or otherwise hindered in his development and use of the property. Under all the circumstances, the trial court found that Spielman's delay in seeking clarification of the zoning classification was not unreasonable. We find that conclusion supported in the record.

As to any prejudice to Deere & Company, the court found that the record did not indicate any change of position by Deere in reliance upon action or forbearance by the plaintiff. It further found that neither the public, nor any other party had been prejudiced in the delay before commencement of the instant action. Deere counters these findings, arguing that they were prejudiced in that (1) the county board membership has changed in the interim to the detriment of Deere, and (2) that they proceeded with their petition to change their adjoining property's classification from M-1 to C-3. As to the change in membership on the county board, there is nothing in the record to indicate how any current board would approach and decide a request by Deere & Company to rezone its property back to M-1. Any speculation about their response to such a petition is just that, speculation. So far as the record shows, Deere has not attempted to make any change in its zoning of that parcel. That the membership of the county board has changed is evident, but the mere change in membership will not be presumed to be prejudicial to Deere. Nor will we draw inferences from the fact that the county chose not to proceed with the appeal in this case. The asserted prejudice arising from the change in board membership has not been shown in record. Secondly, concerning Deere's own petition to rezone its adjoining property to AG-1, it is clear that while that action was related to the Spielman petition and controversy, nevertheless the petition was filed at a time when all

concerned thought the Spielman property was zoned C-3. It must also be noted that there was no showing that Deere's own petition was conditioned upon rezoning of the Spielman property back to AG-1. In fact, both matters were considered by the county board at the same meeting, that of December 17, 1974. Thus, it is evidence that Deere's petition was filed and decided at a time before the plaintiff could have taken action he is alleged to have omitted to take. Deere's action, taken before the December 17, 1974, meeting, can hardly be said to have been in reliance upon the lack of action by the plaintiff *after* the December 17, 1974, meeting. Nor can their change in zoning be said to be in reliance upon the declaration of zoning made by the board on December 17, 1974. As a final note, there is nothing to indicate that Deere has attempted to rezone its property back to M-1 or that it desires such change.

Those cases cited by Deere & Company as supporting their claim of laches are distinguishable in that in them unreasonable delay and reliance were demonstrated. As already noted, each case must be determined on its own facts and circumstances. In the instant case we have determined that the trial court's findings on the issue of laches are not against the manifest weight of the evidence.

In summary, we have determined that the actions of the county board in October 1973, which approved the rezoning of the Spielman property to C-3 (commercial), was valid and proper action. There is no dispute among the parties that the subsequent action by the county board was legally ineffective to change that original rezoning action. Finally, as to whether laches should operate to bar plaintiff Spielman from challenging subsequent, invalid board action, we have determined that the lower court's findings were not contrary to the manifest weight of the evidence and will not be disturbed. Accordingly, we affirm the trial court's declaratory judgment holding that the Spielman property was rezoned C-3 in October 1973 and has remained in that classification to the time of this action and judgment.

For the reasons stated, the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.