CARL M. DIETZ *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF MIDLOTHIAN *et al.*, Defendants-Appellants.

First District (4th Division)   No. 79-983

Opinion filed May 1, 1980.

Berger and Herman, Ltd., and John R. Sullivan, both of Chicago (Burton Berger, of counsel), for appellants.

Bresingham and Fera, of Chicago (John J. Bresingham, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The trial court, in a declaratory judgment action, found that the annexation by the Village of Midlothian (the Village) of the subject property was valid, but that the Village's zoning classification of commercial and multiple family was arbitrary, capricious and unreasonable. On appeal, the defendants, the Village, Charles Keskel, the Heritage/Pullman Bank & Trust Company, as trustee of a land trust (the Bank), and Herman and Frances Ketelaar, argue the plaintiffs did not prove that the zoning of the subject property as multiple family and commercial was arbitrary, capricious and unreasonable. The plaintiffs, Carl M. Dietz, Fred Reigel, William McCarthy and Milton Gromenz, neighboring homeowners who are suing individually and as class representatives, and the Forest Ridge Home Owners' Association, argue the annexation was void and unconstitutional.

On November 26, 1976, the Ketelaars signed an application and petition for an annexation agreement. On December 22, 1976, they entered into a contract to purchase the property which is the subject of this appeal. On December 23, 1976, a legal notice was published stating that a zoning board of appeals hearing was to be held on January 6, 1977, on the requested annexation and proposed multiple family zoning. That

meeting was held as scheduled and the zoning board recommended to the village board that the requested change to multiple family be allowed.

On July 1, 1977, the Ketelaars and the bank as trustee executed and filed a second petition to annex the subject property. In the annexation agreement accompanying the second petition the Ketelaars asked that a portion of the property be zoned commercial and the balance multiple family. On July 7, 1977, a legal notice was published stating that the village board would conduct a hearing on July 27, 1977, regarding the question of annexation and zoning. At the July 27 hearing three ordinances were passed: one authorized the village president to execute the preannexation agreement for the development of the property; a second annexed the property; and a third zoned the northern portion of the property commercial and the balance multiple family.

The property consists of approximately 12 acres of vacant land bounded by 147th Street on the north, LeClaire (5100 west) on the east, Laramie (5200 west) on the west and irregularly on the south to approximately 100 feet north of 149th Street. The property has approximately 300 feet of frontage on 147th Street. One Hundred and Forty-seventh Street is a four-lane street east of Cicero (4800 west), but it is a two-lane blacktop road, without sidewalks, curbs or gutters at the location of the subject property. The street extends to the west as far as Oak Park Avenue, 2½ miles west of Cicero Avenue. Directly across 147th Street to the north of the subject property is the Midlothian Country Club's golf course.

To the east and across LeClaire on 147th Street is a parcel of land which extends to the south approximately one-half the distance of the subject property. This parcel, which is smaller than the subject property, is zoned multiple family. The site was vacant at the time of trial. To the south of that parcel are single family homes. To the east of these homes and the vacant land, extending along 147th Street, south to 151st Street and east slightly more than a quarter mile towards Cicero Avenue are single-family homes and vacant property which is zoned single family. The intersection of 147th Street and Cicero Avenue is a highly developed commercial area in Midlothian.

To the south of the subject property on the north side of 149th Street are single-family homes which are partly in Oak Forest and partly in an unincorporated area of Cook County. Across 149th Street are two schools and additional single-family homes.

On the west side of Laramie is a school play area, adjacent to the southern half of the subject property. North of the play area, and adjacent to the remainder of the western boundary of the subject property are single-family homes. To the west of these homes is an area zoned single family with some improved parcels and some vacant. West of these

homes on Laramie facing 147th Street is a nursing home, and directly west of the nursing home is a property which is used as a construction office. About half a mile west of the subject property, at the intersection of 147th Street and Central Avenue (5600 west), is a highly developed area of mixed commercial and multiple family in Oak Forest.

The Ketelaars' proposed development consists of 33 six-flat apartments which would be in a row, with a 25-foot setback. Each building will be three stories high. Each unit will have two parking spaces.

Under the terms of the annexation agreement, the Ketelaars agreed to dedicate the east 33 feet and the north 17 feet of the property for streets and another portion of the property for 148th Street; agreed to fully improve both sides of LeClaire Avenue, from 147th to 149th Streets, including curb, gutter, sidewalks, street lights, sewer and pavement; and agreed to improve Laramie Avenue by patching and repairing it from 147th to 149th Streets and by installing water and sewer, fire plugs and sidewalks on the side of the street abutting their property. Sidewalks were also to be installed on 147th and 148th Streets. They also agreed to install a north-south access road; to landscape the property so that its appearance would not detract from the surrounding area with a minimum of $75 per unit to be spent for this purpose; and to construct appropriate water and sewer lines to serve the premises.

John Keblusek and William D. McCarthy, neighboring landowners, testified for the plaintiffs. Keblusek said the subject property was being used as a stud farm for raising and breeding horses at the time he bought his house. Later it became a horse stable. Keblusek testified that the only sidewalks in the area are on the property owned by the school district. He objected to the proposed zoning because of the high density, the congestion around the school area and the increase in traffic which would result. He said he expected the area to remain zoned single family. McCarthy said the buildings and fences on the subject property were in a bad state of repair when it was purchased by the Ketelaars. He said that if the property were left dormant it would depreciate the value of his property. He objected to the rezoning for various reasons including his belief that his home would be more difficult to sell if the subject property was zoned commercial and multiple family. He said the trend in the area was for single-family zoning.

Arthur Lange, the superintendent of the school district for the area, objected to the proposed use because there are no sidewalks other than immediately surrounding the school. He was also concerned about the increased traffic it would bring and about the safety of the children leaving school. He said there would be no difficulty in taking additional children into the school.

Rolf C. Campbell, a city planning and zoning consultant, said that in his opinion the character of the area and the subject property is single family. He said although the trend of development in the area was for single-family homes, he did not believe there had been any new single-family homes built in the area in the last five years. In reaching his opinion that the best use for the property was single family, he took into consideration the fact that the property immediately to the east of the subject property has been zoned multiple family. He thought this had a bearing on the zoning of the subject property. Campbell thought the proposed density of 23.2 units per acre was high.

James Jesk, mayor of Oak Forest, testified that the subject property should remain single family. He commented on the traffic problems which would result from the proposed development and possible flooding, and he also said the property was too far from Midlothian's emergency facilities.

Louis F. Crawford, a real estate appraiser and consultant, testified that the highest and best use of the subject property was for single-family homes. He based this opinion on the fact that the proposed development would create a substantial traffic hazard in the area. He was also concerned about the lack of sidewalks and curbs on the existing streets. He said there would be an increased burden on municipal services and that the development might create an overcrowding of the elementary and junior high schools. Crawford also said the development would have a depreciating effect of as much as 5-10% on the areas immediately adjacent to the subject property. He believed the property was worth $600,000 if zoned for single-family development and $660,000 if zoned for multiple family and commercial. Crawford said the planned construction of sidewalks around the development would facilitate pedestrian movement.

Mayor Raday of Midlothian testified that the nearest property which was zoned commercial was about four blocks from the subject property. However, there is a nursing home and construction office one block away. Raday said one factor the Village took into consideration in rezoning the property was the waiting list for rental units in Midlothian. One of the reasons the Village wanted to have the subject property zoned for commercial and multiple family was the need of the community for tax dollars. Raday thought the development would not be detrimental to the people surrounding it; he believed it would be beneficial since it would bring utilities to the area and would improve the streets.

William S. Lawrence, the defendants' zoning consultant, said the highest and best use of the property was as commercial and multiple family. In reaching this opinion he took into consideration the fact that the parcel immediately east of it was zoned for multiple family. He believed

the trend of the area was for multiple family due to the demand for housing for elderly and young people.

Joseph E. Szgonina, a traffic engineer, testified that in his opinion the projected daily morning and evening peak hours for traffic would not have a depreciative impact on the streets. He was in charge of a traffic survey which showed that traffic at 147th and Laramie was heaviest from 4 to 6 p.m. During that two-hour period 806 vehicles entered or departed the intersection. On 147th Street the total daily traffic volume was 9-10,000 cars per day. He did not talk to any school personnel regarding traffic problems at the school. He had not done any previous studies in the area. He did not know if there were sidewalks or bike paths in the area.

Edmund Burke, engineer for the Village, said he was also employed by the Ketelaars. Burke said he determined the density for the proposed development. The Village zoning ordinance does not state what densities are permitted. He said 40 to 45 single-family lots could be put on the subject property.

Three different real estate brokers testified for the defendants. They said the highest and best use of the subject property was for commercial and multiple family. Their estimates of the value of the property ranged from $830,000 to $1,050,000 if zoned commercial and multiple and from $472,500 to $500,000 if zoned for single family. Each expressed the opinion that the use of the property for multiple family and commercial would not adversely affect the surrounding area.

The plaintiffs argue on cross-appeal that the provisions of Illinois' annexation statute are jurisdictional and that it is mandatory that proper petitioners sign the petition for annexation. The statute provides:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality and which territory has no electors residing therein * * *, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory, * * *."
> (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8.)

The plaintiffs argue that because the Ketelaars were not the owners of record on November 26, 1976, when their first petition was signed, the hearing before the zoning board and the passage of the annexation ordinance were void.

The Ketelaars signed a real estate contract for the subject property on December 22, 1976, approximately one month subsequent to their filing of a petition seeking annexation by the Village. A hearing was conducted before the zoning board of appeals on January 6, 1977. The Ketelaars and the trustee of the land trust which held title to the subject property filed a second petition for annexation and zoning in July of 1977, at which time they were the owners of record.

Later in the same month the Village passed the ordinances allowing the annexation and zoning the subject property commercial and multiple family. The only hearing before the zoning board of appeals was in January of 1977.

■■ We cannot accept the plaintiffs' argument that the annexation was void merely because the Ketelaars were not the owners of record at the time their initial petition was presented to the Village. Although the zoning board of appeals did not have a statutorily valid petition before it at the time the hearing was conducted in January of 1977, the statute does not require that a hearing be held at any time. The plaintiffs rely on the stipulation of facts in which Robert Buckley, a chairman of the board at that time, stated that "[t]o the best of his knowledge" it is necessary that an applicant appear before the zoning board before going to the board of trustees if the zoning requested is other than single family. Because this alleged requirement appears neither in the statute nor, apparently, in any ordinance, we cannot accept the plaintiffs' argument that a hearing held pursuant to an invalid petition makes the subsequent annexation void. A valid petition was before the board of trustees at the time the ordinances were passed. We therefore conclude the annexation was properly effected.

The defendants' argument on appeal is that the plaintiffs did not prove by clear and affirmative evidence that the zoning of the subject property was arbitrary, capricious and unreasonable. They contend a zoning regulation must be sustained where its validity is fairly debatable. In response, the plaintiffs contend that the Village exercised its discretion in an arbitrary, capricious and unreasonable manner by zoning the subject property commercial and multiple family.

A zoning ordinance is presumed valid. (*Elmhurst National Bank v. City of Chicago* (1961), 22 Ill. 2d 396, 176 N.E.2d 771.) The burden is upon the person attacking its validity to establish by clear and affirmative evidence that it is arbitrary. (*Elmhurst.*) The courts should not overrule decisions of municipal authorities where the reasonableness of the classification is debatable and where the municipal authorities' action is not capricious. *Elmhurst.*

■■ The factors to be considered in determining the validity of a zoning ordinance are:

> "(1) the existing uses and zoning of nearby property, (2) the extent property values are affected by the particular classification, (3) the promotion of the public welfare, (4) the relative gain to the public as compared to the hardship imposed upon the property owner, and (5) the suitability of the property for the purpose zoned." (*Garner v. City of Carmi* (1963), 28 Ill. 2d 560, 564, 192 N.E.2d 816, 819.)

The factor which is given the most weight is "whether the subject property is zoned in conformity with surrounding existing uses and whether those are uniform and established." *Gregory v. City of Wheaton* (1961), 23 Ill.2d 402, 406, 178 N.E.2d 358, 360.

Testimony at the trial and the numerous exhibits made a part of the record show that the area in which the subject property is located consists of a large number of single-family homes and unimproved areas which have been zoned for single family, but this is not the only existing use. Immediately adjacent to the subject property to the east is a parcel which has been zoned for multiple family. To the north of the subject property is the Midlothian Country Club. Approximately one block to the west of the subject property is a nursing home and construction office. South of the subject property, across 149th Street, are two schools. Additionally, approximately three blocks to the east is the intersection of 147th Street and Cicero Avenue, a highly developed commercial area, and half a mile west of the subject property is the intersection of 147th Street and Central Avenue, an area of mixed commercial and multiple family.

The next factor is the extent property values are affected by the particular classification. The evidence on this factor was conflicting. The plaintiffs' witnesses testified that the proposed development would have a depreciating effect on surrounding single-family residences. Crawford, one of the plaintiffs' witnesses, estimated the degree of depreciation at 5-10%. McCarthy, another witness for the plaintiff and owner of a home close to the subject property, conceded that if the property were left dormant in its present state of disrepair, that this condition would also have a depreciating effect on his property. The defendants' witnesses testified generally that the proposed development would not adversely affect surrounding property values.

Whether the zoning classification promotes the public welfare and the relative gain to the public as compared to the hardship imposed upon the property owner are the next factors. The trial judge found the gain to the public was difficult to assess but noted that the public would benefit from the additional taxes the proposed development would generate. Keblusek, a neighboring landowner, testified that he objected to the proposed zoning because of the high density involved, the congestion around the school area and the increased traffic which would result. Lange, the school superintendent, testified the proposed development would increase traffic and that he was concerned about the safety of the school children. He also said the schools had room for additional children. Mayor Jesk of Oak Forest expressed concern about traffic problems, possible flooding, and the distance of the subject property from emergency facilities. Crawford said there would be an increase in traffic hazards and volume, and he was concerned about the lack of sidewalks

and curbs and the increased burden on both municipal facilities and schools.

Mayor Raday of Midlothian believed the proposed development would be of benefit to the surrounding landowners because it would bring utilities to the area and would improve the streets. He also noted the waiting list for rental units in Midlothian. Lawrence, another witness for the defendants, commented on the demand for housing for elderly and young people. Szgonina, a traffic engineer, did not think the increase in traffic would have a depreciative impact on the streets.

The final factor is the suitability of the property for the purpose zoned. Although concluding that the commercial and multiple-family zoning was arbitrary and capricious, the trial judge also said there was no question but that the land itself was suitable for the construction of the proposed units. However, he said the testimony concerning congestion in the use of the schools and recreational facilities indicated that the property might be unsuitable. None of the witnesses expressed an opinion that the subject property is inappropriate for the construction of multiple family dwelling units or that the smaller northern portion is inappropriate for commercial usage.

The burden here is upon the plaintiffs to demonstrate that the zoning classification was arbitrary and capricious. We believe the testimony summarized above, when considered in light of the enumerated factors, demonstrates that the land in question could properly have been classified either single family or multiple family and commercial. The plaintiffs have done no more than to demonstrate that there is a fair difference of opinion concerning the reasonableness of the classification. Under these circumstances the legislative judgment is conclusive. *Wehrmeister v. County of Du Page* (1957), 10 Ill. 2d 604, 141 N.E.2d 26.

For the foregoing reasons the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

JOHNSON and ROMITI, JJ., concur.