FREDERICK KLEIDON *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF HICKORY HILLS *et al.*, Defendants-Appellees.

First District (5th Division) No. 82—2346

Opinion filed December 16, 1983.—Rehearing denied January 26, 1984.

James E. Gierach and Robert M. Winter, both of Gierach & Schussler, Ltd., of Oak Lawn, for appellants.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellee City of Hickory Hills.

William Colson, Morton Denlow, and Ellen T. McKnight, all of Sachnoff, Weaver & Rubenstein, Ltd., of Chicago, for appellees Alex Petrakos and Bank of Hickory Hills.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, owners of three homes whose lots adjoin two residential lots (the subject property), appeal from an order which declared valid a use variation ordinance allowing defendants to develop the subject property for off-site parking and which order denied plaintiffs their attorney fees and awarded costs to defendants. Plaintiffs also appeal the denial of their motion for reconsideration and other relief. We affirm.

Plaintiffs raise the following issues on appeal: (1) whether Ordinance No. 81—14 was adopted in accordance with proper procedures; (2) whether the variation ordinance relates to practical difficulties or particular hardship within the statutory meaning; (3) whether the court's decision was against the manifest weight of the evidence; (4) whether the trial court abused its discretion in permitting an expert witness to testify and in allowing defendants' costs; and (5) whether the court erred in denying attorney fees to plaintiffs.

Defendants are the city of Hickory Hills; the Bank of Hickory Hills as trustee of Trust No. 397; and Alex Petrakos, Gus Makris and Ted Priovolo, beneficiaries of Trust No. 397 (owners). Defendant owners seek to develop the subject property as off-site parking for Greene's West Restaurant and Lounge (Greene's West or restaurant). Greene's West is owned by defendant Petrakos and is located at the northeast corner of 86th Court and 95th Street in the city of Hickory Hills.

The subject property consists of lots 4 and 5 located on the west side of 86th Court north of 95th Street, being northwesterly and across 86th Court from the restaurant premises. The lots have a combined frontage of 153.14 feet on 86th Court and a depth of 140.0 feet. The subject property is zoned R-2 single-family residential. Lot 4 is unimproved; lot 5 (located to the south of lot 4) is improved with a one-story brick single-family residence. To the north of the subject property is a two-story single-family residence. To the east, across 86th Court and north of the restaurant, is an apartment complex. Adjoining the subject property to the south, being the northwest corner of 86th Court and 95th Street, is the site of the city hall and its parking lot. Vacant land lies to the west of the city hall premises. To the west and northwest of the subject property are single-family residences. The residential-commercial line of demarcation has been es-

tablished in the area of the subject property at 200 feet north of 95th Street; the city hall use, the restaurant use (Greene's West), and to the west of the city hall, across 87th Avenue, a professional arts building each extends 200 feet north of 95th Street.

In 1977 defendant owners sought a zoning amendment for the subject property from R-2 single-family residential to C-1 neighborhood commercial in order to utilize the existing residence as a professional building and the unimproved lot for accessory parking for the restaurant. The petition was denied by the Plan Commission.

On November 20, 1979, the Plan Commission recommended approval of the owners' request for a special use permit for accessory parking. The City Council granted the special use by ordinance on November 13, 1980, but rescinded the ordinance on December 11, 1980, after determining that it had lost jurisdiction for failure to act on the Plan Commission's recommendation in a timely manner.

On May 19, 1981, defendant owners requested a variance to permit the use of the property for "over-flow" and employee parking. Following public hearings the Zoning Board of Appeals (hereinafter Zoning Board) on September 1, 1981, reported to the City Council its findings of fact and recommendation in favor of the variation. The City Council on September 10, 1981, accepted the findings and recommendation, and on September 24, 1981, adopted Ordinance No. 81—14 granting the variation.

Plaintiffs filed a complaint for declaratory judgment and injunctive relief to invalidate the variation ordinance and to enjoin development of the subject property for parking. At trial conflicting evidence was presented regarding the present character of the area and the impact of the proposed parking lot upon the neighborhood, the public and the parties themselves. After hearing extensive testimony the court, by judgment order and memorandum decision, found in favor of defendants and against plaintiffs on all issues and declared Ordinance No. 81—14 valid and enforceable. Plaintiffs' motion for reconsideration was denied. Plaintiffs appeal.

OPINION

Decisions made by a city council are legislative, not administrative in nature. (*Erlinger v. City Council* (1975), 28 Ill. App. 3d 324, 325, 328 N.E.2d 663.) As a legislative function, zoning is "subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare." (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill.

App. 3d 561, 575-76, 421 N.E.2d 285.) "In ascertaining whether a particular zoning ordinance is in the interest of the public welfare, each case must be determined upon its own peculiar facts. [Citations.] Where there is room for a legitimate difference of opinion concerning the reasonableness of a particular zoning ordinance, the finding of the legislative body will not be disturbed." (*Downey v. Grimshaw* (1951), 410 Ill. 21, 28, 101 N.E.2d 275.) Our analysis of the instant case will be guided by these principles.

I

The first issue raised is whether Ordinance No. 81—14 was adopted in accordance with proper procedures. Plaintiffs maintain, generally, that the variation was not validly enacted by the City Council because of a failure to comply with the provisions of section 11—13—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—5) and of the city's ordinances. The statute provides, in pertinent part, that

> "*** the regulations *** may provide that the board of appeals or corporate authorities may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained in cases where there are practical difficulties or particular hardship in the way of carrying out the strict letter of any of those regulations relating to the use, construction, or alteration of buildings or structures or the use of land. If the authority to determine and approve variations is vested in the board of appeals it shall be exercised in accordance with the conditions prescribed in Section 11—13—4 ***. If the power to determine and approve variations is reserved to the corporate authorities, it shall be exercised only by the adoption of ordinances. However, no such variation shall be made by the corporate authorities as specified without a hearing before the board of appeals." Ill. Rev. Stat. 1981, ch. 24, par. 11—13—5.

The city of Hickory Hills Ordinance No. 80—22 (July 24, 1980) (hereinafter Ordinance No. 80—22) in pertinent part provides that

> "[t]he power to determine and approve variations is reserved to the City Council and shall be exercised only by the adoption of ordinances"

and further provides that

> "[t]he Board shall not decide or recommend variations in the provisions of the Zoning Ordinance, unless it shall have made findings based upon the evidence presented to it in the follow-

ing cases:

 (1) that the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations governing the district in which it is located; and that the variation, if granted, will not alter the essential character of the locality; or

 (2) that the plight of the owner is due to unique circumstances; and that the variation, if granted, will not alter the essential character of the locality." (Ordinance No. 80—22, sec. 7.03.)

Plaintiffs' contentions of procedural errors and other violations in the adoption of Ordinance No. 81—14 will be discussed seriatim.

(a)

Plaintiffs first contend that the published notice of the public hearing was improperly made in that (1) the notice specified that the hearing was to be held before the Plan Commission and not the Zoning Board, and (2) no notice was published regarding the continuation of the hearing before the Zoning Board. Defendants maintain that under the circumstances proper notice should be deemed given as no prejudice was suffered by the plaintiffs as a result of the misnomer. The purpose of notice is to give all parties an opportunity to support or oppose the matter at issue. "[D]efects in notice may not be raised by parties who have actual notice of the meeting, fail to object to the alleged defect at the meeting, and show no prejudice from the alleged defect." *Armour v. Mueller* (1976), 36 Ill. App. 3d 23, 28, 343 N.E.2d 251; *Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1978), 64 Ill. App. 3d 1038, 1042, 382 N.E.2d 128.

 ■ In the instant case the published notice of the hearing named the Plan Commission rather than the Zoning Board of Appeals as the hearing body. Hearing notices were mailed to the owners of all property within 250 feet of the subject property, including plaintiffs. On June 29, 1981, the hearing commenced before the Plan Commission at which hearing plaintiffs opposed the variation and requested that the matter be referred to the Zoning Board of Appeals. The hearing continued on August 3 and concluded on August 24, on which dates the proceedings were conducted before the Zoning Board without additional notice being published or given. The Plan Commission and the Zoning Board have seven members each, six of whom are members of both bodies. Frederick Kleidon, one of the plaintiffs in this action, was at all relevant times a member of both the Plan Commission and the Zoning Board. The transcripts of the proceedings before the Plan

commission were introduced into evidence before the Zoning Board. The parties stipulated at trial that plaintiffs had actual notice of the June 29 hearing and had notice through their attorney of the August 3 and August 24 hearings, that they were represented by counsel at each of the hearings, and that their attorney had an opportunity to present and did present evidence at the August 24 hearing. Plaintiffs participated in the hearing in person and through their attorney on each of the above dates. On these facts we are unable to find that plaintiffs were prejudiced by any error in naming the Plan Commission in the notice published or by the failure to properly name the Zoning Board.

### (b)

■ Plaintiffs next contend that they were denied a continuance for the purpose of presenting rebuttal evidence at the public hearing and that the public in attendance at the initial hearing before the Plan Commission was led to believe that no further evidence would be taken. Ordinance No. 80—22, section 7.08, in pertinent part provides that interested parties may present witnesses at the public hearing and that parties in opposition may be granted one continuance to present evidence in rebuttal. Although a continuance was initially denied plaintiffs' attorney at the July 29 hearing, the hearing was in fact continued to August 3 and then to August 24 on which dates plaintiffs, through their attorney, did present evidence before the Zoning Board. In their brief plaintiffs admit that a city representative sent a letter to their attorney setting the date of the continued hearing and advising him that evidence in rebuttal could be presented. We are, therefore, unable to find that plaintiffs were prejudiced by the initial denial of a continuance or misled as to whether further evidence would be taken.

### (c)

■ Plaintiffs next contend that the Board failed to make proper findings of fact and argue that Ordinance No. 81—14 is, therefore, void. The failure of an administrative body acting in an advisory capacity to make findings of fact mandated by ordinance does not affect the validity of an ordinance enacted by the legislative body vested with such authority. (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 572, 421 N.E.2d 285; *Schroeder v. County of Winnebago* (1978), 58 Ill. App. 3d 207, 374 N.E.2d 24.) Reports or findings of an administrative body, even when required by statute, are merely advisory and do not affect the authority of the

City Council where the latter has the final decision-making authority. (*Thompson*; see *Spielman v. County of Rock Island* (1982), 103 Ill. App. 3d 514, 431 N.E.2d 770.) Here the authority to grant variations is expressly reserved to the City Council. Therefore, the alleged failure by the Zoning Board to make findings of fact or any asserted deficiency regarding such findings does not invalidate the legislative action taken thereon by the City Council. Accordingly, we need not further address plaintiffs' contention.

(d)

■ Plaintiffs maintain that the City Council adopted Ordinance No. 81—14 without accompanying findings of fact. Illinois statute provides that "[e]very variation or special use, whether made by the board of appeals directly, or by an ordinance after a hearing before the board of appeals, shall be accompanied by findings of facts * * *. The findings of facts shall specify the reason or reasons for making the variation." (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—11.) Ordinance No. 80—22 imposes a similar requirement upon the City Council. (Ordinance No. 80—22, sec. 7.03.) Variation Ordinance No. 81—14 recites adoption of the findings submitted by the Zoning Board which consist of a summary of the testimony before the Board and a restatement of the factors considered by the Board in arriving at its recommendation favoring the granting of the variation. In addition, the ordinance contains further findings that the highest and best use of the property is for parking in conjunction with Greene's West, that said use will enhance the public health, safety and welfare with no proven detrimental effect, that current parking and traffic patterns pose a safety problem which the instant variation will alleviate and that the variation will result in the development of a transitional use in the best interest of the community as a whole. These statements, although minimal, are deemed sufficient to satisfy the requirement contained in the statute and ordinance that every variation be accompanied by findings of facts specifying the reason or reasons for making the variation.

(e)

■ Plaintiffs next argue that the Zoning Board's failure to make findings of facts invalidates its approval of the variation and a two-thirds vote by the City Council was, therefore, required for passage of the ordinance. Since the ordinance did not receive a two-thirds vote, plaintiffs submit the ordinance is void.

Section 11—13—10 of the Illinois Municipal Code states that "[i]n

municipalities of less than 500,000 population, where a variation is to be made by ordinance, upon the report of the board of appeals *** any proposed variation which fails to receive the approval of the board of appeals shall not be passed except by the favorable vote of two-thirds of all aldermen or trustees of the municipality." (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—10.) Ordinance No. 80—22 contains an identical requirement and further provides that the approval of the board of appeals means "the affirmative vote of four members of the Board." The record herein shows that a motion to recommend the proposed variance was passed by a 5-1 vote of the Zoning Board. The variance, having received the requisite number of votes, was approved by the Zoning Board and, therefore, a simple majority vote by the City Council was sufficient to pass the ordinance.

(f)

■ Plaintiffs contend that Ordinance No. 81—14 does not set forth specific terms of relief and is therefore void. Ordinance No. 80—22, section 7.03 provides, in pertinent part, that, regarding variation ordinances "[t]he terms of relief granted shall be specified in the ordinance, and may be conditioned upon such specific terms as are determined by the City Council." The instant ordinance by its terms complies with the requirements of Ordinance No. 80—22. It expressly allows the construction and operation of a parking lot on the subject property subject to certain conditions, *inter alia,* construction of the parking lot in accordance with the plans submitted to the Zoning Board, approval by the building commissioner and the city engineer of certain construction features of the parking lot, and compliance with the Zoning Ordinance according to the determination of the building commissioner. We, therefore, find plaintiffs' contention without merit.

(g)

■ Finally, plaintiffs assert that the instant variation is void since it permits a land use disallowed by other city zoning ordinances. A variation, by definition, is a grant of relief to a property owner from the literal requirements of a zoning ordinance (*International Harvester Co. v. Zoning Board of Appeals* (1963), 43 Ill. App. 2d 440, 446, 193 N.E.2d 856), thereby allowing a land use not permitted under the applicable zoning ordinance. As the instant ordinance expressly repeals any ordinance or part thereof which conflicts with its provisions, there is no inherent incompatibility. Accordingly, we find plaintiffs' contention meritless.

In accordance with all the foregoing, we are unable to find that

improper procedures or violations of statutes or ordinances invalidate the instant ordinance.

## II

The next issue is whether the "practical difficulties or particular hardship" requirement embodied in the pertinent Illinois statute must relate to the land to be varied. Plaintiffs contend that the need or hardship here demonstrated by defendants is unrelated to the land for which the variation is sought and conclude that the variation is, therefore, invalid. Defendants respond that the variation is proper notwithstanding that the "practical difficulties or particular hardship" is unrelated to the subject property and, moreover, that traffic problems and parking needs fall within the statutory requirements of need or hardship.

The statue provides, in pertinent part, that corporate authorities may vary the application of zoning regulations "where there are practical difficulties or particular hardship in the way of carrying out the strict letter of any of those regulations relating to the use, construction, or alteration of buildings or structures or the use of land." (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—5.) Upon consideration of statutes substantially the same as the one here at issue, Illinois courts have approved variations on land unrelated to the difficulties or hardship justifying the variation. In *Kaczorowski v. Elmhurst Chicago Stone Co.* (1957), 10 Ill. 2d 582, 141 N.E.2d 14, the owner of the subject property on which gravel was mined was granted a variation to establish a gravel processing plant on the subject property in order to decrease the amount of heavy truck traffic on an adjacent roadway as the unprocessed gravel would not have to be hauled to the other side of town for processing and then returned to the plant. In upholding the variation the court stated that "the practical difficulties are the added amount of heavy truck traffic *** and the added transportation costs that must obviously accompany it." (10 Ill. 2d 582, 585.) The court again had occasion to consider a statute not substantially different from the one in *Kaczorowski* or the one here at issue in *Village of Riverwoods v. County of Lake* (1970), 122 Ill. App. 2d 254, 258 N.E.2d 131. In *Riverwoods*, a variation was granted as to the subject property to permit parking lots and driveways for occupants of the industrial tract adjacent to the subject property. In upholding the variation the court rejected plaintiff's contentions that the variation was invalid because no proof was submitted of practical difficulties or hardship as to the property for which the variation was granted and that hardship existed only in that it was convenient and desirable to

develop both tracts.

■ Neither *Riverwoods* nor *Kaczorowski* imposed a requirement that the practical difficulties and particular hardship relate to the parcel to be varied; the variations there were granted to alleviate difficulties not on the subject parcels, but on parcels adjacent thereto. Nor do the terms of the statute so limit the grant of a variation. In the instant case evidence was presented regarding traffic and parking congestion on 86th Court, which street adjoins the subject property. We find such evidence sufficient to satisfy the statutory requirement of "practical difficulties or particular hardship" and we are, therefore, unable to find the instant ordinance invalid on that basis.

### III

The next issue is whether the trial court's finding that Ordinance No. 81—14 is valid was contrary to the manifest weight of the evidence. Zoning is primarily a legislative function. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625.) A zoning ordinance is presumed valid (*Dietz v. Village of Midlothian* (1980), 83 Ill. App. 3d 638, 404 N.E.2d 955); this presumption may be overcome only by clear and convincing evidence. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46, 145 N.E.2d 65.) The party challenging the validity of an ordinance bears the burden of establishing by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899; *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 368, 342 N.E.2d 41.) Where testimony is contradictory and it appears that there is only a fair difference of opinion as to the reasonableness of a zoning classification, the legislative judgment will prevail. (*Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309.) The trial court, from its superior position to assess the credibility of the witnesses, determines the weight to be accorded the evidence (*Edgemont Bank & Trust Co. v. City of Belleville* (1980), 85 Ill. App. 3d 665, 407 N.E.2d 159) and the findings of the trial court will not be disturbed unless against the manifest weight of the evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.

The parties agree that the factors relevant to a determination of the validity of the instant variation ordinance are those considered in cases challenging zoning ordinances, namely: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are

diminished by the particular zoning restriction; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in the vicinity of the subject property. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65.

Plaintiffs initially maintain that Ordinance No. 81—14 did not suspend, amend or repeal Ordinance No. 70—2, the Comprehensive Revised Zoning Ordinance For The City of Hickory Hills, and that it is still in full force and effect and must be presumed valid. They argue, therefore, that the *La Salle* criteria must be applied to both Ordinance No. 81—14 and Ordinance No. 70—2. We disagree. Ordinance No. 81—14, by its terms, repeals all ordinances or parts thereof insofar as they are in conflict. Accordingly, we do not consider the validity of Ordinance No. 70—2.

Plaintiffs contend, generally, that Ordinance No. 81—14 is not reasonably related to the public health, safety and welfare and is, therefore, invalid. They maintain that the existence of single-family residences near the property and the single-family residence located on the property itself firmly establish the character of the subject property as residential in nature. Plaintiffs argue that Ordinance No. 81—14 allows construction and operation of a commercial parking lot in a residential area in contravention of the public health, safety and welfare and is, therefore, invalid. Defendants argue that since the subject parking lot will adjoin the city hall parking lot its construction is, therefore, consistent with the existing uses and zoning.

In determining the validity of a zoning decision no single factor is controlling. However, "[o]f paramount importance is the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established." (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309, 388 N.E.2d 388.) The record in the instant case shows that both residential and commercial uses exist in the area. Two nonresidential uses, Greene's West and city hall, are located at the intersection of 95th Street and 86th Court; the parking area serving city hall adjoins the subject property. An apartment complex and the parking lots for that complex and for Greene's West are located east of the proposed parking lot, across 86th Court. Residential uses lie to the immediate west and north of the subject property. The character of 95th Street

is very heavily commercialized. The established residential-commercial line of demarcation in the vicinity of the subject property is at 200 feet north of 95th Street. The proposed parking lot will extend 360 feet north from 95th Street. Across 95th Street from Greene's West a neighborhood shopping center extends south from 95th Street 400 to 600 feet. Elber Maiden, planning and zoning consultant, testified that the character of the locality of the subject property is dominated by residential influences. Leslie Pollock, also a city planning and zoning consultant, voiced the opposing opinion that the character of the area is transitional. In arguing that the subject property acquires its character from the residential uses in the neighborhood, plaintiffs cite *La Salle National Bank v. City of Chicago* (1972), 4 Ill. App. 3d 266, 280 N.E.2d 739, and *Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 311 N.E.2d 268. In both *La Salle* and *Littlestone*, unlike the instant case, the property in question was entirely surrounding by land used for residential purposes or zoned for such use. Here the trial court placed great weight upon the fact that the city hall parking lot is within the same block and, in fact, adjacent to the subject property. (*Cf. Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 181 N.E.2d 96 (residential zoning classification upheld where every other lot in the block had been so improved).) In our opinion the evidence here presented supports the trial court's finding that the uses in the area are both residential and commercial.

Plaintiffs next contend that the subject property is suitable for residential development as permitted under the zoning ordinance. This fact is not disputed. However, the trial court here was required to consider the suitability of the subject property for use as a parking lot, as permitted under the instant ordinance. The court found the evidence on this point in conflict. Plaintiffs' experts testified to drainage problems, engineering and design defects causing traffic safety problems, and various construction defects relating to the proposed parking lot. Defendants presented contrary evidence on those points and further indicated the suitability of the subject property for a parking lot by virtue of its location adjacent to the city hall parking facility and across the street and slightly north of the present restaurant parking area. The record therefore supports the trial court's finding that the evidence was in conflict as to the suitability of the subject property for the uses permitted under Ordinance No. 81—14.

The court likewise found that the evidence was in conflict on the question of the gain to the public as compared to the hardship of individual owners. Sergeant Altman of the Hickory Hills police department testified that the police have received many complaints regard-

ing Greene's West patrons parking on both sides of 86th Court, which practice narrows the street and allows only one vehicle at a time to pass safely. Sergeant Altman further stated that, before construction of the new city hall building commenced, the police maintained operations at that site, that city emergency vehicles regularly exited by way of 86th Court, and that emergency vehicles will again be housed at that location upon completion of the construction. He concluded that the proposed parking lot would be advantageous with respect to the ability of emergency vehicles to respond to calls and from the standpoint of general traffic safety. He could not state with certainty, however, that the proposed parking lot would eliminate all restaurant overflow parking on 86th Court.

John Zgonina, registered professional engineer, testified to the numerous traffic and safety problems he anticipates will result from the use of the proposed parking lot. Such problems include an increased volume of through traffic on 86th Court; an increased number of turning vehicles; decreased pedestrian safety due to heavier traffic; poor visibility for cars crossing 86th Court due to the offset driveways; and safety problems relating to grading, drainage, and other engineering aspects of the parking lot itself. On cross-examination Zgonina conceded that the elimination of a large number of parked cars on 86th Court would improve street safety, but stated that it was not a certainty that construction of the proposed parking lot would result in fewer cars parked on 86th Court. Plaintiffs argue that alleviation of the traffic and parking problem on 86th Court is only speculative as restaurant patrons may continue to utilize 86th Court for parking after construction of the subject parking lot and, moreover, that the business of the restaurant may increase, again resulting in insufficient parking area. Plaintiffs contend that only defendant owners will realize a gain by the introduction of additional off-street parking, and state that the desire for additional parking for the convenience of customers, has been held inadequate to justify a zoning change, citing *Vasilopoulos v. Zoning Board of Appeals* (1975), 34 Ill. App. 3d 480, 340 N.E.2d 19. In *Vasilopoulos*, however, the applicable standard was whether the special use there at issue was necessary for the public convenience at that location. As we are not here concerned with the standard for the granting of a special use by a zoning board, we do not find plaintiffs' argument persuasive. In any event, *Vasilopoulos* is factually distinguishable from the instant case as the reviewing court there found that since the special use would make available parking for only six or seven cars, it was not for the public convenience but for the convenience of plaintiff and his staff. The parking facility in

the instant case would provide off-street parking for 46 cars, thereby serving the public convenience.

In arguing that the only gain resulting from the variation will inure to the benefit of defendant owners, plaintiffs overlook the fact that the variation was granted upon several conditions, among them (1) that use of the varied property or parking spaces acquired under the variation to meet space or parking requirements in the event of expansion by the restaurant or its successor is prohibited, any new addition must have a parking area in compliance with the zoning ordinance; (2) that all provisions of the zoning ordinance concerning development and maintenance of the parking lot, including screening, landscaping, setbacks, surfacing, lighting, drainage, means of ingress and egress, and parking layout shall be complied with; and (3) that the ordinance is required to be recorded, thus giving notice of such restrictions to successor owners. These facts illustrate that the variation speaks to an existing need—the need to reduce the number of cars parking on 86th Court—and is tailored to meet that need with maximum benefit and minimum harm to the public.

Plaintiffs maintain that the instant variance causes a hardship as to them in the form of a diminution in the values of their homes and decreased enjoyment from the use of their properties. They assert that they purchased their homes relying on the existing single-family zoning and are entitled to so rely, citing *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 402 N.E.2d 719. Property use cannot be restricted or limited merely because neighboring property owners so desire, or because they believe it will protect the value of their residences. (*Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 138 N.E.2d 545; *Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 365 N.E.2d 433.) Nor will a zoning ordinance be declared invalid solely because of the objections of adjoining property owners who purchased their homes in reliance on existing zoning classifications. (*Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 577, 421 N.E.2d 285.) While property owners have a right to rely on zoning classifications (see *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 402 N.E.2d 719), those classifications may be amended within the limits of the law. (*Bohan v. Village of Riverside* (1956), 9 Ill. 2d 561, 567, 138 N.E.2d 487; *Thompson.*) We therefore do not find that plaintiffs' objections form a sufficient basis upon which to find Ordinance No. 81—14 invalid.

Nevertheless, upon consideration of the diminution in property values, one of the *La Salle* factors, the trial court found the evidence

on this point contradictory. Plaintiffs' expert testified that the proposed parking lot would cause a 10 to 20% diminution in the values of homes adjacent to the property but conceded that the value of other homes fronting on 86th Court would improve if the traffic in front of their homes lessened. Against this testimony was that of defendants' expert, which was that the proposed parking lot will not affect the values of the homes adjoining the subject property and, further, that any effect on surrounding property values will be of a positive nature, due to the removal of cars parked in front of those homes.

The architect and designer of the proposed parking lot testified that he considered both aesthetic and functional factors in his design. A brick wall, three feet in height, topped with a three-foot evergreen hedge will serve as a visual barrier between the subject property and adjoining residences. The light fixtures will project light horizontally, not above the hedge barrier. The record here presented therefore supports the trial court's findings that the evidence was contradictory regarding both the diminution in value of plaintiffs' property and the gain to defendants as compared to the hardship to plaintiffs.

■ The presumptive validity accorded a zoning ordinance may be overcome only by clear and convincing evidence. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46, 145 N.E.2d 65; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) In the instant case the record shows that each side presented testimony sustaining its contentions. We are bound, however, by the rule that when testimony is contradictory in a trial without a jury, the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless clearly against the manifest weight of the evidence. (See, *e.g., La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) The trial court here, stating that the evidence was contradictory on many points, found that plaintiffs had presented, at best, a debatable question and had failed to meet their heavy burden of proving by clear and convincing evidence that Ordinance No. 81–14 is arbitrary, unreasonable and not substantially related to the public health, safety or welfare. (*Oak Park Trust & Savings Bank v. Village of Palos Park* (1982), 106 Ill. App. 3d 394, 435 N.E.2d 1265; *Tomasek.*) Therefore, the court concluded that the legislative judgment must prevail, citing *Bohan v. Village of Riverside* (1956), 9 Ill. 2d 561, 138 N.E.2d 487. (See also *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625.) After a careful review of the entire record, we are unable to say that the court's findings are contrary to the manifest weight of the evidence and, accordingly, we may not dis-

turb them on review.

### IV

The next issue is whether the trial court abused its discretion in permitting an expert witness to testify. The pertinent facts are as follows: on the morning of the last day of trial, defendants' counsel advised plaintiffs' counsel that defendants, that day, would call Leslie Pollock, a land planner, as an expert witness. The trial court permitted the testimony of Pollock over the objection of plaintiffs' counsel, which objection was renewed after the examination. Plaintiffs contend that they were surprised by the calling of this witness and by his testimony, and that they were prejudiced in that they were prevented from taking Mr. Pollock's deposition and their own experts had no opportunity to "inspect or consider [Pollock's] documents in their study or testimony."

"Whether a witness, previously unknown to the adverse party or not employed until after trial commences, should be allowed to testify is within the discretion of the trial court." (*Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799, 804, 396 N.E.2d 1333.) In exercising its discretion the trial court should consider the following factors: the surprise, if any, to the opposing party; the good faith of the party seeking to call the witness in respect to the notice given the opposition; equal opportunity and access in order that the opposing party may interview or depose the witness prior to trial; and the prejudice which might result from the proposed testimony. *Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559, 564-65, 406 N.E.2d 952.

Plaintiffs concede, in their brief, that Pollock was retained at the "last minute." Thus, their argument is grounded not in a violation of the rules of discovery but in their contention of surprise. Pollock testified for defendants as an expert witness in the area of land planning. In a trial concerning the validity of a zoning ordinance, the calling of an expert in this field and the nature of his testimony could be reasonably anticipated. Defendants raised no issue or argument new to this case by calling Pollock, nor did Pollock's testimony differ substantially from that which had been previously adduced. Moreover, the record fails to show that plaintiffs were prejudiced by the surprise, if any, suffered by them. During cross-examination, plaintiffs' counsel succeeded in qualifying Pollock as a traffic expert and thereafter elicited testimony favorable to plaintiffs' position. In view of these facts plaintiffs have no cause to complain of prejudice, and we are unable to conclude that the court committed reversible error in allowing defendants' expert witness to testify.

Plaintiffs present no argument in support of their contention that the court abused its discretion in awarding defendants costs in this cause and we, therefore, deem such contention waived. 73 Ill. 2d R. 341(e)(7).

In view of our disposition of the foregoing issues, we need not address the remaining contentions.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.