THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MOSE GRIFFIN, Defendant-Appellant (Eular Griffith *et al.*, Intervenors-Appellants).

First District (5th Division)   Nos. 1—92—1086, 1—92—2397 cons.

Opinion filed November 19, 1993.

Patricia Bender, of Washington & Bender, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and Laura L. Morrison, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Defendant Mose Griffin (a/k/a Mose Griffith) and intervenors, Eular Griffith and Mostafa Obaid, appeal from the trial court orders granting the State's request for permanent injunction under the Controlled Substance and Cannabis Nuisance Act (Act) (740 ILCS 40/0.01 (West 1992)), and denying the intervenors' motion to vacate. For the following reasons, we affirm.

On March 10, 1992, the State filed a complaint for injunctive relief pursuant to the Act, alleging that the property located at 3925 West Chicago Avenue and 745 North Harding Avenue, owned by Mose Griffin and Eular Griffith, was an illegal drug house. The property in question is a two-story building occupying the corner of Chicago and Harding. The first floor contains a grocery and liquor store, and the second floor contains a residence.

On March 12, 1992, the trial court granted the State's motion for a temporary restraining order. On March 27, 1992, the court conducted a hearing of the State's motion for a permanent injunction. At this hearing, defense counsel informed the court that she did not believe Eular Griffith was in court, that she did not represent Eular, and that she did not believe the State should be permitted to proceed on its motion for permanent injunction since Eular had not been served with notice of these proceedings. The State's Attorney responded that when Mose was notified of the temporary restraining order, he informed the State that although his wife Eular was part owner of the property in question, Mose and Eular were separated and he had no idea where Eular was. The State informed the court that it had no objection to striking Eular's name from the complaint since only defendant's name appeared on the tax bill and defendant admitted that he owned the building.

The State then proceeded on its complaint for injunctive relief by introducing testimony from three police officers who had observed drug transactions occurring in or around the premises at 3925 West Chicago and 745 North Harding. In addition, the State introduced the testimony of an administrative assistant for the narcotics

nuisance abatement unit of the State's Attorney's office who stated that she met with Mose Griffin and informed him that drugs were being sold in his building. The defense put on no evidence. At the conclusion of the hearing, the court enjoined the premises at 3925 West Chicago and 745 North Harding for a period of one year.

Defendant filed a notice of appeal and a motion to stay enforcement of the judgment. Eular Griffith, claiming to own the building on Chicago and Harding, and Mostafa Obaid, claiming to lease the building's first floor, filed a petition to intervene as of right. Eular and Mostafa also filed a motion to vacate the order enjoining the premises, alleging that the State failed to give service or notice. The State requested that the reviewing court take no action on the defendant's appeal until the trial court ruled on the petition to intervene and motion to vacate, which it stated may be dispositive of all matters. The State indicated that it would not take any steps to enforce the injunction order until there was a ruling by the trial court.

During the hearing before the trial court on the intervenors' petition to intervene and motion to vacate, the State admitted that Eular and Mostafa were not given notice and indicated that it did not object to having the parties intervene "if counsel wished to bring them in and let them testify to make whatever representations." The court allowed Eular and Mostafa to intervene and even asked what the intervenors wanted to present to the court. Defense counsel replied:

> "Your honor, they don't want to present anything they want the motion to vacate the judgment that was entered on March 31, 1992. That is the basis of the motion to vacate judgment because they did not."

Defense counsel told the court that it was not asking to rehear any evidence, and that there was no sense in bringing people back to testify. Defense counsel simply asked the court to grant or deny the motion to vacate the injunction order. However, the court refused to rule on the motion to vacate. Several months later, the State requested that the court deny the motion to vacate. The court granted the State's request. This appeal followed.

Defendant first contends that the trial court abused its discretion in granting a permanent injunction and enjoining the use of the building at Chicago and Harding for a period of one year. Defendant argues that because the evidence here shows at most that he was a personal user of narcotics, and not that the building was being used as a "drug house," the Act was applied in a manner contrary to that intended by the legislature.

■ Defendant correctly asserts that the purpose of the Act is to

address the place where the nuisance occurred, not the person who committed the nuisance. The Act provides:

> "All places and the fixtures and moveable contents thereof, used for the purpose of unlawfully selling, possessing, serving, storing, *** giving away or using controlled substances are hereby declared to be nuisances and may be abated as hereinafter provided and the owners, agents, occupants of and any other person using such place may be enjoined as hereinafter provided." (740 ILCS 40/2 (West 1992).)

The Act further provides that if the existence of a nuisance is established, the court "shall enter a judgment perpetually restraining all persons from maintaining or permitting such nuisance, and from using the place in which the same is maintained for any purpose *** for a period of one year thereafter." (740 ILCS 40/6 (West 1992).) At the hearing upon the merits, "evidence of the general reputation of such place, of the inmates thereof, and of those resorting thereto, shall be admissible for the purpose of proving the existence of such nuisance." 740 ILCS 40/4 (West 1992).

■ We initially note that no issue is raised and we express no opinion as to the constitutionality of the Act. Defendant simply claims that the Act is inapplicable here because the building is occupied as a residence and the drugs found were for the occupant's personal use. However, defendant's contention is supported neither by the statutory language, legislative history, nor facts produced at trial. First, we note that there is nothing in the statutory language or the legislative history to indicate that the statute is inapplicable to residential property. In fact, Representative Jesse White in the House of Representatives debates made it clear that the statute may apply even if the premises are being used as a residence when he said:

> "Mr. Speaker and Ladies and Gentlemen of the House. I move for adoption of Conference Committee Report #1 to Senate Bill 1227. There is no opposition to the Bill. It is one that will allow the state'[s] attorney to move in to evict a person who is manufacturing or distributing drugs *within an apartment or within a building*. This takes the landlord off the hook and puts the problem of the eviction in the hands of the state['s] attorney office. I move for it's [*sic*] adoption." (Emphasis added.) 87th Ill. Gen. Assem., House Proceedings, July 9, 1991, at 35.

Furthermore, our review of the record here reveals that the injunction was entered not because defendant personally used drugs, but because the evidence revealed that frequent illegal drug transactions had occurred at defendant's building. (See *City of Chicago v. Stern* (1981), 96 Ill. App. 3d 264, 421 N.E.2d 260 (prepon-

derance of the evidence is the standard used in determining whether an injunction should be entered).) The testimony at trial revealed that several drug transactions had occurred at the building on Chicago and Harding during the last year. Officer Bates testified that on April 2, 1992, he was in the vicinity of 3925 West Chicago Avenue, where he observed a man standing in front of the building. When the man observed Officer Bates and his partner, he entered the grocery store located in front of the Chicago and Harding building. Bates and his partner followed the man into the store and observed the man drop off some bags. Officer Bates was familiar with the packaging of street level narcotics and believed that the bags dropped by the man contained heroin. The officers recovered the bags and arrested the man. The substance in the bags did in fact test positive for heroin. Officer Bates further testified that prior to April 2, 1992, he had made approximately 5 to 10 arrests at the building at 3925 West Chicago Avenue. According to Officer Bates, the building has the reputation as a place where drugs are sold.

Officer Zapolsky next testified that he was assigned to the narcotics enforcement section of the Chicago police department, and on December 5, 1991, at 1 a.m., he and a confidential informant were in the vicinity of 3925 West Chicago Avenue. Officer Zapolsky testified that he searched the confidential informant and then gave the informant prerecorded Chicago police department funds. He then observed the confidential informant enter the Chicago and Harding building, and return a few moments later with a packet containing a white substance. That substance was determined to be cocaine.

Officer Zapolsky further testified that at approximately 10 p.m. on December 9, 1991, he was at the Chicago and Harding building when he observed two or three men approach a man who was standing at the side door of the building. After a few minutes of conversation, the men handed the man at the door some money, and the man at the door handed the men some items. Officer Zapolsky testified that he had observed more than 100 narcotics transactions during his tenure with the Chicago police department, and his experience led him to believe that he had just observed a drug transaction. The man at the door then ran up the stairs of the building and Officer Zapolsky followed. The officer then observed the man enter an apartment and throw two bags through a broken window onto the roof next door. The officer made an in-court identification of defendant as the person whom he saw going up the stairs and throwing the objects out of the window. Officer Zapolsky testified that after he observed defendant throw the items, defendant was arrested and the bags defendant had thrown out the window were confiscated. One bag tested positive for cocaine, the other for heroin.

Officer Johnson testified that on January 28, 1992, at approximately 7:30 p.m., she was in the area of 3925 West Chicago Avenue with a confidential informant for the purpose of purchasing narcotics. She searched the informant and then gave him $20 from the police department funds to purchase narcotics at the Chicago and Harding building. Officer Johnson observed the informant enter the building. Soon thereafter, the informant exited the building and handed Officer Johnson the narcotics he had purchased while inside the building. The narcotics tested positive for cocaine.

Officer Johnson testified that in the evening of January 28, 1992, she returned to the Chicago and Harding building with a search warrant executed based on the information obtained from the informant. Johnson testified that as a result of the execution of the warrant, she recovered a clear plastic bag containing three small bags with a rock-like substance in them which later tested positive for cocaine. At the time that Officer Johnson executed the warrant, defendant was in the living room and two other men were lying in the back of the apartment on a bed. She arrested defendant, who said that he owned the building and lived there. Officer Johnson made an in-court identification of defendant.

Based on this testimony, the trial court found that the building located at Chicago and Harding was being used to store, sell, possess, deliver, or manufacture controlled substances. Although the parties have not pointed to and we have not discovered any cases applying the Act, the plain meaning of the statute, the legislative history and the facts in this case lead us to conclude that the trial court properly found the building at Chicago and Harding to be a nuisance.

■ Defendant next contends that the trial court abused its discretion in granting the permanent injunction because it never proved that Mose Griffin owned the building at Chicago and Harding. Defendant's contention is without merit in light of defendant's own testimony at trial. At the hearing for the issuance of the temporary restraining order, the trial judge asked defendant his address. Defendant responded that he owned the building at 3925 West Chicago Avenue but did not live there.

Additionally, throughout the course of the hearing on the permanent injunction, testimony was adduced that defendant claimed to be and was the owner of the building. Juanita Whiteside, an administrative assistant and community liaison for the State's Attorney narcotics nuisance abatement unit, testified that she participated in a conference with the State's Attorney that was held on November 29, 1991. The purpose of the meeting was to inform defendant of the drug activity at his Chicago and Harding building. At the meeting,

Whiteside stated, defendant identified himself as the owner of the building at Chicago and Harding and indicated that he lived there. The nature and extent of that meeting, Whiteside said, were to advise defendant that the State had a police report indicating drug activities at the location of his building and to advise him as to what he needed to do to rid the building of that activity. Whiteside stated that, at that time, defendant stated that he "wanted to cooperate with the State's Attorney's office and that sometimes people came into the building." Defendant also told her that there was a store on the ground level and that sometimes young adults would hang around the store and when he saw them he would try to chase them away. Whiteside advised defendant that he could get in touch with Sergeant Thomas of the 11th district neighborhood relations and that Thomas would assist him in removing these people from his property.

In addition, Officer Zapolsky testified that on December 9, 1991, when he arrested defendant at the Chicago and Harding building, defendant informed him that the bedroom was his. When asked whether he had found proof of defendant's residency, Officer Zapolsky stated that he had and that it consisted of "Official notification from the City of Chicago Traffic Findings of Mr. Mose Griffin that was sent to that address."

Officer Johnson also stated that defendant told her that he owned the building. At the time she executed the search warrant, defendant was in the living room and two other men were lying in the back of the apartment on a bed. She arrested defendant, who said that he owned the building and lived there.

Defendant relies on *Stern*, wherein the court found that plaintiff had presented no evidence whatsoever as to ownership, operation, or control of the premises. However, the instant case is distinguishable since defendant admitted to the court and to witnesses that he did in fact own the building.

■ The intervenors next contend that because they were not given notice of the injunction hearing, the trial court should have granted their motion to vacate the permanent injunction order. The Act provides:

"[N]o such injunctive relief shall be granted, except on behalf of an owner or agent, unless it be made to appear to the satisfaction of the court that the owner or agent of such place, knew or had been personally served with a notice signed by the plaintiff and, that such notice has been served upon such owner or such agent of such place at least 5 days prior thereto, that such place, specifically describing the same, was being so used, naming the date or dates of its being so used, and that such owner or agent

had failed to abate such nuisance, or that upon diligent inquiry such owner or agent could not be found within Illinois for the service of such preliminary notice. The lessee, if any, of such place shall be made a party defendant to such petition." (740 ILCS 40/3 (West 1992).)

The intervenors contend that the trial court entered a preliminary injunction and permanent injunction without the State showing that service and notice had been made upon Eular Griffith and Mostafa Obaid, or that upon diligent inquiry, such service or notice could not be made.

Based on the particular facts of this case, we find no error in the trial court's decision denying the intervenors' motion to vacate. The trial court granted the petition to intervene and made it clear that the intervenors could make any representations that they cared to make. The intervenors, however, informed the court that they wished to present no evidence. Despite defense counsel's assertions that it was Eular Griffith and not Mose Griffin who owned the building, counsel presented absolutely no evidence to support her argument. Similarly, defense counsel presented no evidence in support of her assertion that Mostafa Obaid was a lessee of the Chicago and Harding building. Arguments of counsel are not evidence.

The purpose of notice is to give all parties an opportunity to support or oppose the matter at issue. (*Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 458 N.E.2d 931.) The facts of this case demonstrate that all parties had an opportunity to support or oppose the matter at issue. The intervenors simply chose to present no evidence.

Accordingly, for the reasons set forth above, we affirm the decision of the trial court.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.